# EXHIBIT A

# EXHIBIT A-1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF   NEW YORK

Cindy Candy Arenas, Jaky Alyssa Arenas, Jiny Alexa
Arenas, Joe Leos Arenas, Elhadji Cisse, Donald Kirkland,
Beverly Kirkland, Connor Brown, and Cassandra Adams

                                      Plaintiff(s),

                    *-against-*

Southwest Airlines Co.;The Boeing Company; GE Aviation
Systems, LLC; Safran USA, Inc.; and CFM International,
Inc.

                                      Defendant(s).

Index No.

**Summons**

Date Index No. Purchased:

To the above named Defendant(s)

Southwest Airlines Co.
Corporation Service Company
80 State Street, Albany, New York 12207

You are hereby summoned to answer the complaint in this action and to serve
a copy of your answer, or, if the complaint is not served with this summons, to serve
a notice of appearance, on the Plaintiff's attorney within 20 days after the service of
this summons, exclusive of the day of service (or within 30 days after the service is
complete if this summons is not personally delivered to you within the State of New
York); and in case of your failure to appear or answer, judgment will be taken against
you by default for the relief demanded in the complaint.

The basis of venue is   where the cause of action arose
which is   permitted pursuant to New York Consolidated Laws, Civil Practice Law and Rules CVP § 503(a).

Dated:   Atlanta, Georgia

         June 19, 2018

                                  Jonathan W. Johnson, LLC

                                  by   /s/ Jonathan W. Johnson

                                  Jonathan W. Johnson
                                  **Attorneys for Plaintiff**
                                  Cindy Candy Arenas, Jaky Alyssa Arenas, Jiny
                                  Alexa Arenas, Joe Leos Arenas, Elhadji Cisse,
                                  Donald Kirkland, Beverly Kirkland, Connor
                                  Brown, and Cassandra Adams

                                  Jonathan W. Johnson, LLC
                                  2296 Henderson Mill Rd., Suite 304
                                  Atlanta, Georgia 30345

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF  NEW YORK

-------------------------------------------------

Cindy Candy Arenas, Jaky Alyssa Arenas, Jiny Alexa Arenas,
Joe Leos Arenas, Elhadji Cisse, Donald Kirkland, Beverly
Kirkland, Connor Brown, and Cassandra Adams

                     Plaintiff(s),

                -against-

Southwest Airlines Co.;The Boeing Company; GE Aviation
Systems, LLC; Safran USA, Inc.; and CFM International,
Inc.

                    Defendant(s).

-------------------------------------------------

Index No.

**Summons**

Date Index No. Purchased:

To the above named Defendant(s)

    The Boeing Company
    Corporation Service Company
    80 State Street, Albany, New York 12207

You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

    The basis of venue is   where the cause of action arose
which is   permitted pursuant to New York Consolidated Laws, Civil Practice Law and Rules CVP § 503(a).

Dated: Atlanta, Georgia

     June 19, 2018

                       Jonathan W. Johnson, LLC

                     by  /s/ Jonathan W. Johnson_____

                     Jonathan W. Johnson

                 **Attorneys for Plaintiff**

                 Cindy Candy Arenas, Jaky Alyssa Arenas, Jiny
                 Alexa Arenas, Joe Leos Arenas, Elhadji Cisse,
                 Donald Kirkland, Beverly Kirkland, Connor
                 Brown, and Cassandra Adams

                 Jonathan W. Johnson, LLC
                 2296 Henderson Mill Rd., Suite 304
                 Atlanta, Georgia 30345

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF   NEW YORK

------------------------------------------------

**Cindy Candy Arenas, Jaky Alyssa Arenas, Jiny Alexa Arenas, Joe Leos Arenas, Elhadji Cisse, Donald Kirkland, Beverly Kirkland, Connor Brown, and Cassandra Adams**

Plaintiff(s),

*-against-*

Southwest Airlines Co.;The Boeing Company; GE Aviation Systems, LLC; Safran USA, Inc.; and CFM International, Inc.

Defendant(s).

------------------------------------------------

Index No.

𝔖𝔲𝔪𝔪𝔬𝔫𝔰

Date Index No. Purchased:

To the above named Defendant(s)

GE Aviation Systems, LLC
CT Corporation System
111 Eight Avenue, New York, New York 10011

You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

The basis of venue is   where the cause of action arose

which is   permitted pursuant to New York Consolidated Laws, Civil Practice Law and Rules CVP § 503(a).

Dated:   Atlanta, Georgia

June 19, 2018

Jonathan W. Johnson, LLC

by  /s/ Jonathan W. Johnson

Jonathan W. Johnson

**Attorneys for Plaintiff**

Cindy Candy Arenas, Jaky Alyssa Arenas, Jiny Alexa Arenas, Joe Leos Arenas, Elhadji Cisse, Donald Kirkland, Beverly Kirkland, Connor Brown, and Cassandra Adams

Jonathan W. Johnson, LLC
2296 Henderson Mill Rd., Suite 304
Atlanta, Georgia 30345

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF   NEW YORK

---

Cindy Candy Arenas, Jaky Alyssa Arenas, Jiny Alexa Arenas,
Joe Leos Arenas, Elhadji Cisse, Donald Kirkland, Beverly
Kirkland, Connor Brown, and Cassandra Adams

                              Plaintiff(s),

                    -against-

Southwest Airlines Co.;The Boeing Company; GE Aviation
Systems, LLC; Safran USA, Inc.; and CFM International,
Inc.

                              Defendant(s).

---

Index No.

## 𝔖𝔲𝔪𝔪𝔬𝔫𝔰

Date Index No. Purchased:

To the above named Defendant(s)

> Safran USA, Inc.
> Corporation Service Company
> 80 State Street, Albany, New York 12207

You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

The basis of venue is   where the cause of action arose
which is   permitted pursuant to New York Consolidated Laws, Civil Practice Law and Rules CVP § 503(a).

Dated: Atlanta, Georgia

        June 19, 2018

                    Jonathan W. Johnson, LLC

                    by  /s/ Jonathan W. Johnson
                      Jonathan W. Johnson
                    Attorneys for Plaintiff
                      Cindy Candy Arenas, Jaky Alyssa Arenas, Jiny
                      Alexa Arenas, Joe Leos Arenas, Elhadji Cisse,
                      Donald Kirkland, Beverly Kirkland, Connor
                      Brown, and Cassandra Adams

                      Jonathan W. Johnson, LLC
                      2296 Henderson Mill Rd., Suite 304
                      Atlanta, Georgia 30345

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF   NEW YORK

------------------------------------------------

Cindy Candy Arenas, Jaky Alyssa Arenas, Jiny Alexa Arenas,
Joe Leos Arenas, Elhadji Cisse, Donald Kirkland, Beverly
Kirkland, Connor Brown, and Cassandra Adams

                                     Plaintiff(s),

                        -against-

Southwest Airlines Co.;The Boeing Company; GE Aviation
Systems, LLC; Safran USA, Inc.; and CFM International,
Inc.

                                     Defendant(s).

------------------------------------------------

Index No.

**Summons**

Date Index No. Purchased:

To the above named Defendant(s)

CFM International, Inc.
The Corporation Trust Company
Corporation Trust Center 1209 Orange Street, Wilmington, Delaware 19801

You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

The basis of venue is   where the cause of action arose
which is   permitted pursuant to New York Consolidated Laws, Civil Practice Law and Rules CVP § 503(a).

Dated:   Atlanta, Georgia

      June 19, 2018

                            Jonathan W. Johnson, LLC

                            by  /s/Jonathan W. Johnson
                            Jonathan W. Johnson
                            Attorneys for Plaintiff
                            Cindy Candy Arenas, Jaky Alyssa Arenas, Jiny
                            Alexa Arenas, Joe Leos Arenas, Elhadji Cisse,
                            Donald Kirkland, Beverly Kirkland, Connor
                            Brown, and Cassandra Adams

                            Jonathan W. Johnson, LLC
                            2296 Henderson Mill Rd., Suite 304
                            Atlanta, Georgia 30345

# EXHIBIT A-2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X

CINDY CANDY ARENAS,
JAKY ALYSSA ARENAS,
JINY ALEXA ARENAS,
JOE LEOS ARENAS,
ELHADJI CISSE,
DONALD KIRKLAND,
BEVERLY KIRKLAND,
CONNOR BROWN, and
CASSANDRA ADAMS

               Plaintiffs                          Index No.:

      vs.

SOUTHWEST AIRLINES CO.;
THE BOEING COMPANY;
GE AVIATION SYSTEMS, LLC;
SAFRAN USA, INC;  and
CFM INTERNATIONAL, INC.

               Defendants
-------------------------------------------------------------------X

      Plaintiffs Cindy Candy Arenas, Jaky Alyssa Arena, Jiny Alexa Arenas, Joe Leos Arenas,

Elhadji Cisse, Donald Kirkland, Beverly Kirkland, Connor Brown and Cassandra Adams

(collectively "Plaintiffs") by and through their attorneys, Jonathan W. Johnson, LLC, for their

Complaint against Defendants Southwest Airlines Co., The Boeing Company, GE Aviation

Systems, LLC, Safran USA, Inc., and CFM International, Inc. jointly and severally, allege as

follows:

## **INTRODUCTION**

1.     On April 17, 2018, Plaintiffs were fare-paying passengers aboard Southwest Airlines Flight

1380 from New York-LaGuardia Airport to Dallas, Texas, and about twenty minutes after takeoff,

at an altitude of approximately 32,500 feet, the aircraft's left engine suddenly failed and self-destructed, propelling metal fragments at high velocity against the fuselage and shattering a window, which resulted in explosive and violent decompression of the aircraft cabin. Abruptly, a passenger was sucked into the open window, and the other passengers, including Plaintiffs, were confronted with their greatest fear, the overwhelming horror of being trapped in a plane about to crash.

**PARTIES**

2.      Plaintiff Cindy Candy Arenas ("Cindy Arenas") is a citizen and resident of the State of Texas, and was a passenger on Southwest Flight 1380.

3.      Plaintiff Jaky Alyssa Arenas ("Jaky Arenas") is a citizen and resident of the State of Texas, and was a passenger on Southwest Flight 1380.

4.      Plaintiff Jiny Alexa Arenas ("Jiny Arenas") is a citizen and resident of the State of Texas, and was a passenger on Southwest Flight 1380.

5.      Plaintiff Joe Leos Arenas ("Joe Arenas") is a citizen and resident of the State of Texas, and was not a passenger on Southwest Flight 1380; however, he is the husband of Plaintiff Cindy Arenas, and his claim is for loss of consortium.

6.      Plaintiff Elhadji Cisse is a citizen and resident of the State of Texas, and was a passenger on Southwest Flight 1380.

7.      Plaintiff Donald Kirkland is a citizen and resident of the State of Louisiana, and was a passenger on Southwest Flight 1380.

2

8.      Plaintiff Beverly Kirkland is a citizen and resident of the State of Louisiana, and was a passenger on Southwest Flight 1380.

9.      Plaintiff Connor Brown is a citizen and resident of the State of New Mexico, and was a passenger on Southwest Flight 1380.

10.     Plaintiff Cassandra Adams is a citizen and resident of the State of New Mexico, and was a passenger on Southwest Flight 1380.

11.     Defendant Southwest Airlines Co. ("Southwest Airlines") is, and was at all relevant times, a corporation incorporated under the laws of the State of Texas; it operates as a common carrier airline with its principal place of business at 2702 Love Field Drive, Dallas, Texas75235; it is authorized to do business, and does business, in the State of New York; it is not a resident of the State of New York, but may be served through its Registered Agent—Corporation Service Company, 80 State Street, Albany, New York 12207.

12.     Defendant The Boeing Company ("Boeing") is, and was at all relevant times, a corporation incorporated under the laws of the State of Delaware; it operates as a manufacturer of aircraft for commercial air travel, with its principal executive offices at 100 N. Riverside Plaza, Chicago, Illinois; it is authorized to do business, and does business, in the State of New York; it is not a resident of the State of New York, but may be served through its Registered Agent—Corporation Service Company, 80 State Street, Albany, New York 12207.

13.     Defendant GE Aviation Systems, LLC ("GE Aviation") is, and was at all relevant times, a limited liability company organized under the laws of the State of Delaware; upon information and belief, it engages in, jointly with others, the design, development, manufacture and sale of aircraft engines, with its principal place of business at One Neuman Way, Cincinnati, Ohio 45215; it is

3

authorized to do business, and does business, in the State of New York; it is not a resident of the State of New York, but may be served through its Registered Agent—CT Corporation System, 111 Eight Avenue, New York, New York 10011.

14.     Defendant Safran USA, Inc. ("Safran USA") is, and was at all relevant times, a corporation incorporated under the laws of the State of Delaware; upon information and belief, it engages in, jointly with others, the design, development, manufacture and sale of aircraft engines, with its principal executive office at 2201 W. Royal Lane, Suite 150, Irving, Texas 75063; it is authorized to do business, and does business, in the State of New York; it is not a resident of the State of New York, but may be served through its Registered Agent—Corporation Service Company, 80 State Street, Albany, New York 12207.

15.     Defendant CFM International, Inc. ("CFM") is, and was at all relevant times, a corporation incorporated under the laws of the State of Delaware; upon information and belief, it engages in, jointly with others, the design, development, manufacture and sale of aircraft engines, with its principal place of business at One Neuman Way, Cincinnati, Ohio 45215; it is not a resident of the State of New York, but may be served through its Registered Agent—The Corporation Trust Company, Corporation Trust Center 1209 Orange Street, Wilmington, Delaware 19801.

## JURISDICTION AND VENUE

16.     As set forth in the factual allegations that follow herein, the events leading to the engine failure that caused the passenger fatality and the injuries to other passengers, including Plaintiffs, occurred in New York prior to departure of Southwest Airlines Flight 1380.  That was the last opportunity for Defendant Southwest Airlines to inspect, detect and correct the problem of a fractured fan blade that was about to cause the fatal engine failure, or in the alternative to remove

4

the aircraft from service. Once the Southwest Airlines Flight 1380 took off, the fatal incident was inexorable—indeed, it occurred just twenty minutes after liftoff from New York-LaGuardia Airport. Jurisdiction for this lawsuit is properly in New York where the cause of action arose, and it is proper in the Supreme Court of New York.

17.     Inasmuch as none of the parties reside in the State of New York, Plaintiffs are permitted to designate the county of venue pursuant to New York Consolidated Laws, Civil Practice Law and Rules CVP § 503(a).

## FACTUAL ALLEGATIONS

18.     On April 17, 2018, Southwest Airlines Flight 1380 lifted off from New York-LaGuardia Airport bound for Dallas, Texas, with the ultimate intended destination of San Francisco ("Flight 1380").

19.     Within twenty minutes after liftoff, the passengers heard a loud bang as if something on the aircraft had exploded, or as if the aircraft had collided with something in midair.

20.     Upon information and belief, the left engine of the aircraft sustained a catastrophic failure, self-destructed, and projected metal fragments at high velocity against the fuselage and shattered a window of the aircraft.

21.     Instantly, the window collapsed resulting in explosive and violent decompression of the Aircraft cabin.

22.     The passenger nearest the window was sucked into the opening created by the shattered window and became lodged there.

5

23.     The passengers experienced the Aircraft begin to fall and roll as the oxygen masks came down.

24.     Debris was flying throughout the cabin, there was the smell of something burning, and passengers experienced extreme pain in their ears.

25.     During the excruciating moments following the explosion, the Plaintiffs endured the horrific fear of a plane crash—suddenly and unexpectedly, they were facing death.

26.     Eventually, with only one engine remaining, the pilot was able to bring the Aircraft under control and make an emergency landing at Philadelphia International Airport.

27.     The engine failure caused the death of the passenger who was sucked into the window, and caused egregious damage to other passengers, including Plaintiffs.

28.     As a direct result of the frightful, death-threatening Flight 1380 incident, each Plaintiff suffered severe mental, emotional and psychological injuries, including post-traumatic stress disorder, and physical injuries.

29.     At all relevant times, Defendant Southwest Airlines was a common carrier engaged in the business of transporting paying passengers by air.

30.     At all relevant times, Defendant Boeing was an aircraft manufacturer engaged in the business of manufacturing and selling aircraft to be used for transporting paying passengers by air.

31.     Upon information and belief, at all relevant times Defendants GE Aviation Systems, LLC, Safran USA, Inc. and CFM International, Inc. (collectively "Defendant Engine Manufacturers") were jointly engaged in the design, development, manufacture and sale of aircraft engines to be installed on aircraft used for transporting paying passengers by air.

6

32.     Upon information and belief, the Flight 1380 aircraft was a Boeing 737-700 with the registration N772SW (the "Aircraft"), manufactured by Defendant Boeing and sold to Defendant Southwest Airlines.

33.     Upon information and belief, the Aircraft was powered by CFM56-7B engines which were manufactured by Defendant Engine Manufacturers; the engines, including the engine that failed (the "Engine") was sold to Boeing; and Boeing installed the Engine on the Aircraft that it sold to Defendant Southwest Airlines.

## FIRST CAUSE OF ACTION
## NEGLIGENCE AGAINST DEFENDANT SOUTHWEST AIRLINES

34.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

35.     As a common carrier airline transporting passengers for a fee, Defendant Southwest Airlines had a duty to provide the highest degree of care for its passengers, whose very lives were at risk.

36.     Defendant Southwest Airlines had a duty to reasonably monitor, inspect, test, service, maintain and repair the Aircraft and the Engine to keep its aircraft reasonably safe for its passengers, or to remove from service aircraft that were not reasonably safe.

37.     Defendant Southwest Airlines negligently failed in its duty to provide the highest degree of care for its passengers whose lives were at risk; and further failed in its duty to provide even a reasonable degree of care for its passengers.

7

38.     Defendant Southwest Airlines' negligently failed to reasonably monitor, inspect, test, service, maintain and repair the Aircraft and the Engine to keep its aircraft reasonably safe for its passengers, and to remove from service aircraft that were not reasonably safe.

39.     Defendant Southwest Airlines' negligence was the direct and proximate cause of the engine failure and the resulting injuries and damages suffered by Plaintiffs.

40.     As a direct and proximate result of the negligence of Defendant Southwest Airlines, each Plaintiff suffered, and will continue to suffer, severe mental, emotional and psychological injuries, including post-traumatic stress disorder, and physical injuries and resulting expenses, losses and damages, the amount of which is undetermined at this time.

41.     Plaintiff Joe Arenas was not a passenger on Flight 1380, but he suffered the loss of consortium of his wife, Plaintiff Cindy Arenas, due to the devastating impact upon their marital relationship; and, Plaintiffs Donald Kirkland and Beverly Kirkland are, and were at all relevant times, married, and each suffered loss of consortium due to the devastating impact upon their martial relationship.

42.     By reason of the foregoing, Defendant Southwest Airlines is liable to Plaintiffs for compensatory damages in a sum to be determined at trial.

## SECOND CAUSE OF ACTION
## BREACH OF CONTRACT (INCLUDING EXPRESS AND IMPLIED WARRANTIES)

43.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

8

44.     As a common carrier airline transporting passengers for a fee, Defendant Southwest Airlines contracted with its passengers, including Plaintiffs, to provide air transportation with aircraft that are reasonably safe for its passengers.

45.     Pursuant to its contractual obligations, including express and implied warranties, Defendant Southwest Airlines had a duty to reasonably monitor, inspect, test, service, maintain and repair the Aircraft and the Engine to keep its aircraft reasonably safe for its passengers, and to remove from service aircraft that were not reasonably safe.

46.     Defendant Southwest Airlines' failed to perform pursuant to its contractual obligations, including express and implied warranties, to reasonably monitor, inspect, test, service, maintain and repair the Aircraft and the Engine to keep its aircraft reasonably safe for its passengers, and to remove from service aircraft that were not reasonably safe.

47.     As a result of Defendant Southwest Airlines' breach of contract, including express and implied warranties, each Plaintiff suffered, and will continue to suffer, severe mental, emotional and psychological injuries, including post-traumatic stress disorder, and physical injuries and resulting expenses, losses and damages, the amount of which is undetermined at this time.

48.     Plaintiff Joe Arenas was not a passenger on Flight 1380, but he suffered the loss of consortium of his wife, Plaintiff Cindy Arenas, due to the devastating impact upon their marital relationship; and, Plaintiffs Donald Kirkland and Beverly Kirkland are, and were at all relevant times, married, and each suffered loss of consortium due to the devastating impact upon their martial relationship.

49.     By reason of the foregoing, Defendant Southwest Airlines is liable to Plaintiffs for compensatory damages in a sum to be determined at trial.

9

## THIRD CAUSE OF ACTION

## NEGLIGENCE AGAINST DEFENDANT BOEING

50.    Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

51.    Defendant Boeing, in its business of designing, developing, manufacturing and selling aircraft, including the component engines, had a duty to assure that its aircraft were reasonably safe for the passengers flying therein, whose safety and lives are at risk; including the duty to provide warnings and safety instructions for monitoring, inspecting, testing, servicing, maintaining and repairing the aircraft, including component engines.

52.    Defendant Boeing negligently failed to assure that the Aircraft and the component Engine sold to Defendant Southwest Airlines was reasonably safe; and Defendant Boeing failed to provide adequate warnings and safety instructions for monitoring, inspecting, testing, servicing, maintaining and repairing the Aircraft and the Engine for passenger safety.

53.    Defendant Boeing's negligence was the direct and proximate cause of the engine failure and the resulting injuries and damages suffered by Plaintiffs.

54.    As a direct and proximate result of the negligence of Defendant Boeing, each Plaintiff suffered, and will continue to suffer, severe emotional and psychological injuries, including post-traumatic stress disorder, and physical injuries and resulting expenses and damages, the amount of which is undetermined at this time.

55.    Plaintiff Joe Arenas was not a passenger on Flight 1380, but he suffered the loss of consortium of his wife, Plaintiff Cindy Arenas, due to the devastating impact upon their marital relationship; and, Plaintiffs Donald Kirkland and Beverly Kirkland are, and were at all relevant

10

times, married, and each suffered loss of consortium due to the devastating impact upon their martial relationship.

56. By reason of the foregoing, Defendant Boeing is liable to Plaintiffs for compensatory damages in a sum to be determined at trial.

## FOURTH CAUSE OF ACTION
## STRICT PRODUCT LIABILITY AGAINST DEFENDANT BOEING

57. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

58. Defendant Boeing, in its business of designing, developing, manufacturing and selling aircraft, including the component engines, had a duty to assure that its aircraft were not defective and unreasonably dangerous for the passengers flying therein, whose safety and lives are at risk.

59. Defendant Boeing had the duty to provide adequate warnings and safety instructions for its customer, Defendant Southwest Airlines, to monitor, inspect, test, service, maintain and repair the Aircraft and component the Engine.

60. The Aircraft and the component Engine sold by Defendant Boeing to Defendant Southwest Airlines was defective and unreasonably dangerous in design and manufacture, and was defective and unreasonably dangerous with regard to the inadequacy of warnings and safety instructions for monitoring, inspecting, testing, servicing, maintaining and repairing the Aircraft and the Engine for passenger safety.

61. The defective and unreasonably dangerous Aircraft, including the Engine and the inadequate warnings and safety instructions, from Defendant Boeing was the direct and proximate cause of the engine failure and the resulting injuries suffered by Plaintiffs.

11

62.     As a direct and proximate result of the foregoing, each Plaintiff suffered, and will continue to suffer, severe emotional and psychological injuries, including post-traumatic stress disorder, and physical injuries and resulting expenses and damages, the amount of which is undetermined at this time.

63.     Plaintiff Joe Arenas was not a passenger on Flight 1380, but he suffered the loss of consortium of his wife, Plaintiff Cindy Arenas, due to the devastating impact upon their marital relationship; and, Plaintiffs Donald Kirkland and Beverly Kirkland are, and were at all relevant times, married, and each suffered loss of consortium due to the devastating impact upon their martial relationship.

64.     By reason of the foregoing, Defendant Boeing is liable to Plaintiffs for compensatory damages in a sum to be determined at trial.

**FIFTH CAUSE OF ACTION**

**NEGLIGENCE AGAINST DEFENDANTS GE AVIATION SYSTEMS, SAFRAN USA, AND CFM INTERNATIONAL**

65.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

66.     Defendants GE Aviation Systems, Safran USA and CFM International (collectively "Defendant Engine Manufacturers"), in their business of designing, developing, manufacturing and selling engines for aircraft, had a duty to assure that their engines were reasonably safe for the passengers flying in aircraft powered by their engines, and whose safety and lives are at risk; including the duty to provide warnings and safety instructions for monitoring, inspecting, testing, servicing, maintaining and repairing the engines.

12

67.     Defendant Engine Manufacturers negligently failed to assure that the Engine sold to Defendant Boeing and installed on the Aircraft Boeing sold to Southwest Airlines was reasonably safe; and it negligently failed to provide adequate warnings and safety instructions for monitoring, inspecting, testing, servicing, maintaining and repairing the Engine for passenger safety.

68.     Defendant Engine Manufacturers' negligence was the direct and proximate cause of the engine failure and the resulting injuries and damages suffered by Plaintiffs.

69.     As a direct and proximate result of the negligence of Defendant Engine Manufacturers, each Plaintiff suffered, and will continue to suffer, severe mental, emotional and psychological injuries, including post-traumatic stress disorder, and physical injuries and resulting expenses and damages, the amount of which is undetermined at this time.

70.     Plaintiff Joe Arenas was not a passenger on Flight 1380, but he suffered the loss of consortium of his wife, Plaintiff Cindy Arenas, due to the devastating impact upon their marital relationship; and, Plaintiffs Donald Kirkland and Beverly Kirkland are, and were at all relevant times, married, and each suffered loss of consortium due to the devastating impact upon their martial relationship.

71.     By reason of the foregoing, Defendant Engine Manufacturers are liable to Plaintiffs for compensatory damages in a sum to be determined at trial.

## SIXTH CAUSE OF ACTION

### STRICT PRODUCT LIABILITY AGAINST DEFENDANTS GE AVIATION SYSTEMS, SAFRAN USA, AND CFM INTERNATIONAL

72.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

73.     Defendant Engine Manufacturers, in their business of designing, developing, manufacturing and selling engines for aircraft, had a duty to assure that its engines were not defective and unreasonably dangerous for the passengers flying in aircraft powered by their engines, whose safety and lives are at risk.

74.     Defendant Engine Manufacturers had the duty to provide adequate warnings and safety instructions for its ultimate customer, Defendant Southwest Airlines, to monitor, inspect, test, service, maintain and repair the Engine.

75.     The Engine sold by Defendant Engine Manufacturers to Defendant Boeing and installed on the aircraft sold by Defendant Boeing to Defendant Southwest Airlines was defective and unreasonably dangerous in design and manufacture, and was defective and unreasonably dangerous with regard to the inadequacy of warnings and safety instructions for monitoring, inspecting, testing, servicing, maintaining and repairing the Engine for passenger safety.

76.     The defective and unreasonably dangerous Engine and the inadequate warnings and safety instructions, from Defendant Engine Manufacturers was the direct and proximate cause of the engine failure and the resulting injuries suffered by Plaintiffs.

77.     As a direct and proximate result of the foregoing, each Plaintiff suffered, and will continue to suffer, severe emotional and psychological injuries, including post-traumatic stress disorder, and physical injuries and resulting expenses and damages, the amount of which is undetermined at this time.

78.     Plaintiff Joe Arenas was not a passenger on Flight 1380, but he suffered the loss of consortium of his wife, Plaintiff Cindy Arenas, due to the devastating impact upon their marital relationship; and, Plaintiffs Donald Kirkland and Beverly Kirkland are, and were at all relevant

14

times, married, and each suffered loss of consortium due to the devastating impact upon their martial relationship.

79.     By reason of the foregoing, Defendant Engine Manufacturers are liable to Plaintiffs for compensatory damages in a sum to be determined at trial.

## SEVENTH CAUSE OF ACTION
## PUNITIVE DAMAGES AGAINST ALL DEFENDANTS

80.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

81.     Upon information and belief, all Defendants were aware of safety concerns with the CFM56-7B engines and the imperative need for adequate monitoring, inspection, testing, service, maintenance and repair.

82.     Specifically, in September 2016 Defendant Southwest Airlines experienced an engine failure of the same type (broken fan blade), on the same type engine (CFM56-7B), on the same type aircraft (Boeing 737-700), as with Flight 1380 (the "2016 Engine Failure").

83.     Upon information and belief, all Defendants were aware of the "2016 Engine Failure" and the dangerous propensity for such catastrophic engine failure, and the serious, potentially fatal, consequences resulting therefrom.

84.     Upon information and belief, following the 2016 Engine Failure, the Defendant Engine Manufacturers made a meager effort to address the danger by issuing a technical bulletin urging its customers, including Defendant Southwest Airlines, to conduct more frequent ultrasonic inspections of the engine fan.

15

85.     Upon information and belief, the Defendant Engine Manufacturers did nothing more to address the known danger inherent in the subject engines for the protection of passengers on aircraft that were powered by the subject engines.

86.     Upon information and belief, Defendant Boeing did nothing to address the known danger inherent in the subject engines for the protection of passengers on aircraft it manufactured and sold that were powered by the subject engines.

87.     Upon information and belief, Defendant Southwest Airlines did nothing to address the known danger inherent in the subject engines for the protection of passengers on it flights with aircraft that were powered by the subject engines.

88.     Upon information and belief, Defendant Southwest Airlines failed and refused to comply with the Defendant Engine Manufacturer's bulletin, and it did not conduct ultrasonic inspections of the engine fan as urged by such bulletin.

89.     Defendant Southwest Airlines' failure and refusal to comply with the Engine Manufacturer's safety bulletin, and its failure and refusal to take any action to address the known danger inherent in the subject engines, constituted willful or wanton negligence, and/or recklessness, and/or manifested a conscious disregard of the safety of its passengers, and/or conduct so reckless as to amount to such disregard.

90.     Defendant Boeing's failure and refusal to take any action to address the known danger inherent in the subject engines for the safety of passengers on the aircraft it sold with the subject engines constituted willful or wanton negligence, and/or recklessness, and/or manifested a conscious disregard of the safety of its passengers, and/or conduct so reckless as to amount to such disregard.

16

91.     Defendant Engine Manufacturers' failure and refusal to take any action to address the known danger inherent in the subject engines for the safety of passengers on aircraft powered by the subject engines it sold, other than the mere publication of a bulletin, constituted willful or wanton negligence, and/or recklessness, and/or manifested a conscious disregard of the safety of its passengers, and/or conduct so reckless as to amount to such disregard.

92.     Defendant Southwest Airlines' willful, wanton and/or reckless conduct was the direct and proximate cause of the engine failure and the resulting injuries and damages suffered by Plaintiffs.

93.     By reason of the foregoing, Defendant Southwest Airlines is liable to Plaintiffs for punitive damages in a sum to be determined by a jury at trial.

94.     Defendant Boeing' willful, wanton and/or reckless conduct was the direct and proximate cause of the engine failure and the resulting injuries and damages suffered by Plaintiffs.

95.     By reason of the foregoing, Defendant Boeing is liable to Plaintiffs for punitive damages in a sum to be determined by a jury at trial.

96.     Defendant Engine Manufacturers' willful, wanton and/or reckless conduct was the direct and proximate cause of the engine failure and the resulting injuries and damages suffered by Plaintiffs.

97.     By reason of the foregoing, Defendant Engine Manufacturers are liable to Plaintiffs for punitive damages in a sum to be determined by a jury at trial.

## EIGHTH CAUSE OF ACTION
## LOSS OF CONSORTIUM

98.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

17

99.     Plaintiffs Joe Arenas and Cindy Arenas are, and at all relevant times were, married.

100.    Plaintiff Joe Arenas has suffered, and will continue to suffer, loss of consortium, including loss of martial companionship, society, affection, support, services, assistance, conjugal fellowship, and other physical, emotional and psychological harm inflicted upon the martial relationship as a result of the Southwest Flight 1380 incident.

101.    Each Defendant's actions and/or omissions as alleged herein were the direct, proximate, legal cause of the loss of consortium suffered by Plaintiff Joe Arenas.

102.    Plaintiff Joe Arenas is entitled to an award for past and future loss of consortium, including loss of martial companionship, society, affection, support, services, assistance, conjugal fellowship, and other physical, emotional and psychological harm inflicted upon the martial relationship as a result of the Southwest Flight 1380 incident, and other damages according to law.

103.    Plaintiffs Donald Kirkland and Beverly Kirkland are, and at all relevant times were, married.

104.    Plaintiffs Donald Kirkland and Beverly Kirkland have suffered, and will continue to suffer, loss of consortium, including loss of martial companionship, society, affection, support, services, assistance, conjugal fellowship, and other physical, emotional and psychological harm inflicted upon the martial relationship as a result of the Southwest Flight 1380 incident.

105.    Each Defendant's actions and/or omissions as alleged herein were the direct, proximate, legal cause of the loss of consortium suffered by Plaintiffs Donald Kirkland and Beverly Kirkland.

106.    Plaintiffs Donald Kirkland and Beverly Kirkland are entitled to an award for past and future loss of consortium, including loss of martial companionship, society, affection, support, services,

18

assistance, conjugal fellowship, and other physical, emotional and psychological harm inflicted upon the martial relationship as a result of the Southwest Flight 1380 incident, and other damages according to law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs each demand judgment against Defendants as follows:

1.   For compensatory or general damages in an amount according to proof;

2.   For special and economic damages, including past and future expenses, according to proof;

3.   For loss of consortium suffered by Plaintiffs Joe Arenas, Donald Kirkland and Beverly Kirkland;

4.   For punitive damages;

5.   For costs of suit incurred herein;

6.   For such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

This June 19th, 2018.

**Jonathan W. Johnson, LLC**                   */s/ Jonathan W. Johnson*
2296 Henderson Mill Road, Suite 304        Jonathan W. Johnson
Atlanta, GA 30345                          New York Bar Number: 2543189
404.298.0795 Telephone                     *Attorney for Plaintiffs*
404.941.2285 Facsimile

19

jwj@jonathanjohnsonatlantalawyer.com


**The James Law Firm, PLLC**       */s/ Jacqueline M. James*
445 Hamilton Avenue, Suite 1102       Jacqueline M. James
White Plains, New York 10601       New York Bar Number: 2384220
914.358.6423 Telephone       *Attorney for Plaintiffs*
914.358.6424 Facsimile
jjameslaw@optonline.net

20

# EXHIBIT A-3

# DOCKET ENTRY 3 DELETED

# EXHIBIT A-4

# DOCKET ENTRY 4 DELETED

# EXHIBIT A-5

# DOCKET ENTRY 5 DELETED

# EXHIBIT A-6

# DOCKET ENTRY 6 DELETED

# EXHIBIT A-7

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------x

CINDY CANDY ARENAS, JAKY ALYSSA ARENAS,
JINY ALEXA ARENAS, JOE LEOS ARENAS, ELHADJI
CISSE, DONALD KIRKLAND, BEVERLY KIRKLAND,
CONNOR BROWN, and CASSANDRA ADAMS,

                                          **Plaintiffs,**

                -against-

SOUTHWEST AIRLINES CO., THE BOEING
COMPANY, GE AVIATION SYSTEMS, LLC, SAFRAN
USA, INC., and CFM INTERNATIONAL, INC.,

                                        **Defendants.**
------------------------------------------------------------------x

**Index No.: 155786/2018**


**STIPULATION EXTENDING
TIME TO ANSWER OR
OTHERWISE RESPOND TO
COMPLAINT**

       IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned, that

the time for Defendants to answer, move or otherwise appear in response to the Verified

Complaint is extended until and including January 10, 2019. Nothing in this stipulation, nor from

any party's entry into this stipulation, constitutes a consent to jurisdiction of the court over that

party, nor waives or otherwise affects any claim or defense of any party, including a defense of

lack of jurisdiction.

       IT IS FURTHER STIPULATED AND AGREED that this stipulation may be signed in

counterparts, and signatures transmitted by facsimile, email, or other electronic means shall have

the same force and effect as original signatures.

Dated: October __, 2018


JONATHAN W. JOHNSON, LLC

By: _____
    Jonathan W. Johnson, Esq.
2296 Henderson Mill Road, Suite 304
Atlanta, Georgia 30345
(404) 298-0795
*Attorneys for Plaintiff*


PERKINS COIE LLP

By: _____
    Edwin M. Baum, Esq.
30 Rockefeller Plaza, 22nd Floor
New York, New York 10112-0085
(212) 261-6878
*Attorneys for Defendant*
*The Boeing Company*


SCHNADER HARRISON SEGAL &
LEWIS LLP

By: _____
    Barry S. Alexander, Esq.
140 Broadway, Suite 3100
New York, New York 10005-1001
(212) 973-8000
*Attorneys for Defendant*
*Southwest Airlines Co*


PAUL HASTINGS LLP

By: _____
    James B. Worthington, Esq.
200 Park Avenue
New York, New York 10166
(212) 318-6416
*Attorneys for Defendants*
*GE Aviation Systems, LLC, Safran USA,*
*Inc., and CFM International, Inc.*

2

# EXHIBIT A-8

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------------x

CINDY CANDY ARENAS, JAKY ALYSSA ARENAS,
JINY ALEXA ARENAS, JOE LEOS ARENAS, ELHADJI      Index No.: 155786/2018
CISSE, DONALD KIRKLAND, BEVERLY KIRKLAND,
CONNOR BROWN, and CASSANDRA ADAMS,

                                    Plaintiffs.      STIPULATION EXTENDING
                                                     TIME TO ANSWER OR
                                                     OTHERWISE RESPOND TO
                                                     COMPLAINT
            -against-

SOUTHWEST AIRLINES CO., THE BOEING
COMPANY, GE AVIATION SYSTEMS, LLC, SAFRAN
USA, INC., and CFM INTERNATIONAL, INC.,

                                    Defendants.
----------------------------------------------------------------x

IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned, that

the time for Defendants to answer, move or otherwise appear in response to the Verified

Complaint is extended until and including January 22, 2019. Nothing in this stipulation, nor from

any party's entry into this stipulation, constitutes a consent to jurisdiction of the court over that

party, nor waives or otherwise affects any claim or defense of any party, including a defense of

lack of jurisdiction.

IT IS FURTHER STIPULATED AND AGREED that this stipulation may be signed in

counterparts, and signatures transmitted by facsimile, email, or other electronic means shall have

the same force and effect as original signatures.

Dated: December 28, 2018

JONATHAN W. JOHNSON, LLC

By:_____
    Jonathan W. Johnson, Esq.
2296 Henderson Mill Road, Suite 304
Atlanta, Georgia 30345
(404) 298-0795
*Attorneys for Plaintiff*

PERKINS COIE LLP

By: *Edwin M. Baum / Esq*
    Edwin M. Baum, Esq.
30 Rockefeller Plaza, 22nd Floor
New York, New York 10112-0085
(212) 261-6878
*Attorneys for Defendant*
*The Boeing Company*

SCHNADER  HARRISON  SEGAL  &
LEWIS LLP

By:_____
    Barry S. Alexander, Esq.
140 Broadway, Suite 3100
New York, New York 10005-1001
(212) 973-8000
*Attorneys for Defendant*
*Southwest Airlines Co*

PAUL HASTINGS LLP

By: *James B. Worthington / Esq*
    James B. Worthington, Esq.
200 Park Avenue
New York, New York 10166
(212) 318-6416
*Attorneys for Defendants*
*GE Aviation Systems, LLC, Safran USA,*
*Inc., and CFM International, Inc.*

# EXHIBIT A-9

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------x

CINDY CANDY ARENAS, JAKY ALYSSA ARENAS,
JINY ALEXA ARENAS, JOE LEOS ARENAS, ELHADJI
CISSE, DONALD KIRKLAND, BEVERLY KIRKLAND,
CONNOR BROWN, and CASSANDRA ADAMS,

                                      Plaintiffs,

                  -against-

SOUTHWEST AIRLINES CO., THE BOEING
COMPANY, GE AVIATION SYSTEMS, LLC, SAFRAN
USA, INC., and CFM INTERNATIONAL, INC.,

                                  Defendants.
------------------------------------------------------------------x

**Index No.: 155786/2018**

**STIPULATION EXTENDING
TIME TO ANSWER OR
OTHERWISE RESPOND TO
COMPLAINT**

     IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned, that

the time for Defendants to answer, move or otherwise appear in response to the Verified

Complaint is extended until and including February 1, 2019. Nothing in this stipulation, nor from

any party's entry into this stipulation, constitutes a consent to jurisdiction of the court over that

party, nor waives or otherwise affects any claim or defense of any party, including a defense of

lack of jurisdiction.

     IT IS FURTHER STIPULATED AND AGREED that this stipulation may be signed in

counterparts, and signatures transmitted by facsimile, email, or other electronic means shall have

the same force and effect as original signatures.

Dated: January 14, 2019

JONATHAN W. JOHNSON, LLC

By: _____

Jonathan W. Johnson, Esq.
2296 Henderson Mill Road, Suite 304
Atlanta, Georgia 30345
(404) 298-0795
*Attorneys for Plaintiff*


PERKINS COIE LLP

By: _____

Edwin M. Baum, Esq.
30 Rockefeller Plaza, 22nd Floor
New York, New York 10112-0085
(212) 261-6878
*Attorneys for Defendant*
*The Boeing Company*


SCHNADER   HARRISON   SEGAL   &
LEWIS LLP

By: _____

Barry S. Alexander, Esq.
140 Broadway, Suite 3100
New York, New York 10005-1001
(212) 973-8000
*Attorneys for Defendant*
*Southwest Airlines Co*


PAUL HASTINGS LLP

By: _____

James B. Worthington, Esq.
200 Park Avenue
New York, New York 10166
(212) 318-6416
*Attorneys for Defendants*
*GE Aviation Systems, LLC, Safran USA,*
*Inc., and CFM International, Inc.*

2

# EXHIBIT A-10

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------------x

CINDY CANDY ARENAS, JAKY ALYSSA ARENAS,
JINY ALEXA ARENAS, JOE LEOS ARENAS, ELHADJI          **Index No.: 155786/2018**
CISSE, DONALD KIRKLAND, BEVERLY KIRKLAND,
CONNOR BROWN, and CASSANDRA ADAMS,

                                    Plaintiffs,       **STIPULATION EXTENDING**
                                                      **TIME TO ANSWER OR**
                                                      **OTHERWISE RESPOND TO**
                    -against-                         **COMPLAINT**

SOUTHWEST AIRLINES CO., THE BOEING
COMPANY, GE AVIATION SYSTEMS, LLC, SAFRAN
USA, INC., and CFM INTERNATIONAL, INC.,

                                    Defendants.
--------------------------------------------------------------x

        IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned, that

the time for Defendants to answer, move or otherwise appear in response to the Verified

Complaint is extended until and including March 8, 2019. Nothing in this stipulation, nor from

any party's entry into this stipulation, constitutes a consent to jurisdiction of the court over that

party, nor waives or otherwise affects any claim or defense of any party, including a defense of

lack of jurisdiction.

        IT IS FURTHER STIPULATED AND AGREED that this stipulation may be signed in

counterparts, and signatures transmitted by facsimile, email, or other electronic means shall have

the same force and effect as original signatures.

Dated:  January 30, 2019

JONATHAN W. JOHNSON, LLC

By:_____
     Jonathan W. Johnson, Esq.
2296 Henderson Mill Road, Suite 304
Atlanta, Georgia 30345
(404) 298-0795
*Attorneys for Plaintiff*

SCHNADER   HARRISON   SEGAL   &
LEWIS LLP

By:_____
     Barry S. Alexander, Esq.
140 Broadway, Suite 3100
New York, New York 10005-1001
(212) 973-8000
*Attorneys for Defendant*
*Southwest Airlines Co*

PERKINS COIE LLP

By:_____
     Edwin M. Baum, Esq.
30 Rockefeller Plaza, 22nd Floor
New York, New York 10112-0085
(212) 261-6878
*Attorneys for Defendant*
*The Boeing Company*

PAUL HASTINGS LLP

By:_____
     James B. Worthington, Esq.
200 Park Avenue
New York, New York 10166
(212) 318-6416
*Attorneys for Defendants*
*GE Aviation Systems, LLC, Safran USA,*
*Inc., and CFM International, Inc.*

2

# EXHIBIT A-11

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------x

CINDY CANDY ARENAS, JAKY ALYSSA ARENAS,
JINY ALEXA ARENAS, JOE LEOS ARENAS, ELHADJI
CISSE, DONALD KIRKLAND, BEVERLY KIRKLAND,
CONNOR BROWN, and CASSANDRA ADAMS,

**Index No.: 155786/2018**

                              Plaintiffs,

**STIPULATION EXTENDING
TIME TO ANSWER OR
OTHERWISE RESPOND TO
COMPLAINT**

            -against-

SOUTHWEST AIRLINES CO., THE BOEING
COMPANY, GE AVIATION SYSTEMS, LLC, SAFRAN
USA, INC., and CFM INTERNATIONAL, INC.,

                           Defendants.
------------------------------------------------------------------x

      IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned, that

the time for Defendants to answer, move or otherwise appear in response to the Verified

Complaint is extended until and including March 15, 2019. Nothing in this stipulation, nor from

any party's entry into this stipulation, constitutes a consent to jurisdiction of the court over that

party, nor waives or otherwise affects any claim or defense of any party, including a defense of

lack of jurisdiction.

      IT IS FURTHER STIPULATED AND AGREED that this stipulation may be signed in

counterparts, and signatures transmitted by facsimile, email, or other electronic means shall have

the same force and effect as original signatures.

Dated:  March 5, 2019

JONATHAN W. JOHNSON, LLC

By: _Jonathan W. Johnson / sps_
    Jonathan W. Johnson, Esq.
2296 Henderson Mill Road, Suite 304
Atlanta, Georgia 30345
(404) 298-0795
*Attorneys for Plaintiff*

SCHNADER    HARRISON    SEGAL    &
LEWIS LLP

By: _Barry S. Alexander / sps_
    Barry S. Alexander, Esq.
140 Broadway, Suite 3100
New York, New York 10005-1001
(212) 973-8000
*Attorneys for Defendant*
*Southwest Airlines Co*

PERKINS COIE LLP

By: _Edwin M. Baum / sps_
    Edwin M. Baum, Esq.
30 Rockefeller Plaza, 22nd Floor
New York, New York 10112-0085
(212) 261-6878
*Attorneys for Defendant*
*The Boeing Company*

PAUL HASTINGS LLP

By: _James B. Worthington / sps_
    James B. Worthington, Esq.
200 Park Avenue
New York, New York 10166
(212) 318-6416
*Attorneys for Defendants*
*GE Aviation Systems, LLC, Safran USA,*
*Inc., and CFM International, Inc.*

2

# EXHIBIT A-12

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------x

CINDY CANDY ARENAS, JAKY ALYSSA ARENAS,
JINY ALEXA ARENAS, JOE LEOS ARENAS, ELHADJI
CISSE, DONALD KIRKLAND, BEVERLY KIRKLAND,
CONNOR BROWN, and CASSANDRA ADAMS,

Index No.: 155786/2018

                        Plaintiffs,

**STIPULATION EXTENDING TIME TO ANSWER OR OTHERWISE RESPOND TO COMPLAINT**

        -against-

SOUTHWEST AIRLINES CO., THE BOEING
COMPANY, GE AVIATION SYSTEMS, LLC, SAFRAN
USA, INC., and CFM INTERNATIONAL, INC.,

                        Defendants.
------------------------------------------------------------------x

      IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned, that the time for Defendants to answer, move or otherwise appear in response to the Verified Complaint is extended until and including **May 14, 2019**. Nothing in this stipulation, nor from any party's entry into this stipulation, constitutes a consent to jurisdiction of the court over that party, nor waives or otherwise affects any claim or defense of any party, including a defense of lack of jurisdiction.

      IT IS FURTHER STIPULATED AND AGREED that this stipulation may be signed in counterparts, and signatures transmitted by facsimile, email, or other electronic means shall have the same force and effect as original signatures.

Dated: March 12, 2019

JONATHAN W. JOHNSON, LLC

By: _Jonathan W. Johnson /s/s_
    Jonathan W. Johnson, Esq.
2296 Henderson Mill Road, Suite 304
Atlanta, Georgia 30345
(404) 298-0795
*Attorneys for Plaintiff*

PERKINS COIE LLP

By: _Edwin M. Baum /s/s_
    Edwin M. Baum, Esq.
30 Rockefeller Plaza, 22nd Floor
New York, New York 10112-0085
(212) 261-6878
*Attorneys for Defendant*
*The Boeing Company*

SCHNADER HARRISON SEGAL & LEWIS LLP

By: _Barry S. Alexander /s/s_
    Barry S. Alexander, Esq.
140 Broadway, Suite 3100
New York, New York 10005-1001
(212) 973-8000
*Attorneys for Defendant*
*Southwest Airlines Co*

PAUL HASTINGS LLP

By: _James B. Worthington /s/s_
    James B. Worthington, Esq.
200 Park Avenue
New York, New York 10166
(212) 318-6416
*Attorneys for Defendants*
*GE Aviation Systems, LLC, Safran USA,*
*Inc., and CFM International, Inc.*

2

# EXHIBIT A-13

Case 1:19-cv-05761-PKC Document 1-1 Filed 06/19/19 Page 56 of 150

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

----------------------------------------------------------------------x

CINDY CANDY ARENAS, JAKY ALYSSA ARENAS,
JINY ALEXA ARENAS, JOE LEOS ARENAS, ELHADJI
CISSE, DONALD KIRKLAND, BEVERLY KIRKLAND,
CONNOR BROWN, and CASSANDRA ADAMS,

                              Plaintiffs,

               -against-

SOUTHWEST AIRLINES CO., THE BOEING
COMPANY, GE AVIATION SYSTEMS, LLC, SAFRAN
USA, INC., and CFM INTERNATIONAL, INC.,

                         Defendants.

----------------------------------------------------------------------x

**Index No.: 155786/2018**

**STIPULATION EXTENDING
TIME TO ANSWER OR
OTHERWISE RESPOND TO
COMPLAINT**

        IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned, that

the time for Defendants to answer, move or otherwise appear in response to the Verified

Complaint is extended until and including **June 14, 2019**. Nothing in this stipulation, nor from

any party's entry into this stipulation, constitutes a consent to jurisdiction of the court over that

party, nor waives or otherwise affects any claim or defense of any party, including a defense of

lack of jurisdiction.

        IT IS FURTHER STIPULATED AND AGREED that this stipulation may be signed in

counterparts, and signatures transmitted by facsimile, email, or other electronic means shall have

the same force and effect as original signatures.

Dated: May 7, 2019

JONATHAN W. JOHNSON, LLC

By: _____
   Jonathan W. Johnson, Esq.
2296 Henderson Mill Road, Suite 304
Atlanta, Georgia 30345
(404) 298-0795
*Attorneys for Plaintiff*

SCHNADER   HARRISON   SEGAL  &amp;
LEWIS LLP

By: _____
   Barry S. Alexander, Esq.
140 Broadway, Suite 3100
New York, New York 10005-1001
(212) 973-8000
*Attorneys for Defendant*
*Southwest Airlines Co*

PERKINS COIE LLP

By: _____
   Edwin M. Baum, Esq.
30 Rockefeller Plaza, 22nd Floor
New York, New York 10112-0085
(212) 261-6878
*Attorneys for Defendant*
*The Boeing Company*

PAUL HASTINGS LLP

By: _____
   James B. Worthington, Esq.
200 Park Avenue
New York, New York 10166
(212) 318-6416
*Attorneys for Defendants*
*GE Aviation Systems, LLC, Safran USA,*
*Inc., and CFM International, Inc.*

2

# EXHIBIT A-14

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------------X

DR. LANCE TYLER ALBIN;
DR. ALEXIS VICTORIA ALBIN; and
JOE LEOS ARENAS

                Plaintiffs

      vs.

THE BOEING COMPANY;                 Index No: 155786/2018
SOUTHWEST AIRLINES CO.;
GE AVIATION SYSTEMS, LLC;
SAFRAN USA, INC;  and
CFM INTERNATIONAL, INC.

                Defendants
----------------------------------------------------------------X

## FIRST AMENDED COMPLAINT

      Plaintiffs Dr. Lance Tyler Albin, Dr. Alexis Victoria Albin, and Joe Leos Arenas by and

through their attorneys, Jonathan W. Johnson, LLC and Jacqueline M. James, PLLC, for this

First Amended Complaint against Defendants The Boeing Company, Southwest Airlines Co.,

GE Aviation Systems, LLC, Safran USA, Inc., and CFM International, Inc. jointly and severally,

allege as follows:

## INTRODUCTION

1.      This action arises from a fatal in-flight engine explosion of a Boeing 737 aircraft.  On April

17, 2018, Plaintiffs Dr. Tyler Albin and his wife Dr. Alexis Albin were fare-paying passengers

aboard Southwest Airlines Flight 1380 from New York-LaGuardia Airport to Dallas, Texas.

About twenty minutes after takeoff, at an altitude of approximately 32,500 feet, the left engine of

the Boeing aircraft suddenly failed and self-destructed (exploded), propelling metal fragments at

Case 1:19-cv-05761-PKC   Document 1-1   Filed 06/19/19   Page 60 of 150

high velocity against the fuselage and shattering a passenger window, which resulted in explosive and violent decompression of the aircraft cabin. A passenger was forcefully sucked into the open window, and was trapped partially outside the aircraft. The other passengers, including Drs. Tyler and Alexis Albin who were seated nearby, were confronted with the overwhelming horror of being trapped in an airplane that they felt was about to crash. Dr. Tyler Albin, who was on his honeymoon, attempted CPR on the fatal victim prior to the plane arriving at the gate. As a consequence he was covered in her blood upon arrival.

2.      This legal action was initially brought by nine Plaintiffs, and all the original Plaintiffs except one, Joe Arenas, have voluntarily withdrawn their claims from this legal action. Those plaintiffs stipulate that their claims are withdrawn with prejudice. Plaintiff Joe Arenas was not a passenger on Flight 1380, instead, his claim is for loss of consortium based upon the injuries suffered by his wife, who was a passenger on Flight 1380, and she was one of the original Plaintiffs in this action whose claim has been withdrawn (herein "wife of Joe Arenas"). Therefore, Joe Arenas is the sole remaining original Plaintiff. Drs. Tyler and Alexis Albin are added as Plaintiffs in this Amended Complaint, which is filed pursuant to CPLR § 3025 inasmuch as the period of time for responding to the initial Complaint has been extended by agreement among the parties, and no responsive pleading has been filed to the initial Complaint.

## PARTIES

3.      Plaintiff Dr. Lance Tyler Albin ("Dr. Tyler Albin") is a citizen and resident of the State of Louisiana, and was a passenger on Flight 1380, and is the husband of Dr. Alexis Albin.

4.      Plaintiff Dr. Alexis Victoria Albin ("Dr. Alexis Albin") is a citizen and resident of the State of Louisiana, and was a passenger on Flight 1380, and is the wife of Dr. Tyler Albin.

2

5.     Plaintiff Joe Leos Arenas ("Joe Arenas") is a citizen and resident of the State of Texas, and was not a passenger on Flight 1380; however, his wife Cindy Arenas was a passenger on Flight 1380, and his claim is for loss of consortium. His claim has not been withdrawn.

6.     Defendant The Boeing Company ("Boeing") is, and was at all relevant times, a corporation incorporated under the laws of the State of Delaware; it operates as a manufacturer of aircraft for commercial air travel, with its principal executive offices at 100 N. Riverside Plaza, Chicago, Illinois; it is authorized to do business, and does business, in the State of New York; it is not a resident of the State of New York; it was served with the initial Complaint on October 11, 2018.

7.     Defendant Southwest Airlines Co. ("Southwest Airlines") is, and was at all relevant times, a corporation incorporated under the laws of the State of Texas; it operates as a common carrier airline with its principal place of business at 2702 Love Field Drive, Dallas, Texas 75235; it is authorized to do business, and does business, in the State of New York; it is not a resident of the State of New York; it was served with the initial Complaint on October 11, 2018.

8.     Defendant GE Aviation Systems, LLC ("GE Aviation Systems") is, and was at all relevant times, a limited liability company organized under the laws of the State of Delaware; upon information and belief, it engages in, jointly with others, the design, development, manufacture and sale of aircraft engines, with its principal place of business at One Neuman Way, Cincinnati, Ohio 45215; it is authorized to do business, and does business, in the State of New York; it is not a resident of the State of New York; it was served with the initial Complaint on October 12, 2018.

9.     Defendant Safran USA, Inc. ("Safran USA") is, and was at all relevant times, a corporation incorporated under the laws of the State of Delaware; upon information and belief, it engages in, jointly with others, the design, development, manufacture and sale of aircraft engines, with its

3

principal executive office at 2201 W. Royal Lane, Suite 150, Irving, Texas 75063; it is authorized to do business, and does business, in the State of New York; it is not a resident of the State of New York; it was served with the initial Complaint on October 11, 2018.

10.    Defendant CFM International, Inc. ("CFM International") is, and was at all relevant times, a corporation incorporated under the laws of the State of Delaware; upon information and belief, it engages in, jointly with others, the design, development, manufacture and sale of aircraft engines, with its principal place of business at One Neuman Way, Cincinnati, Ohio 45215; it is not a resident of the State of New York; it was served with the initial Complaint on October 11, 2018.

## JURISDICTION AND VENUE

11.    As set forth in the factual allegations that follow herein, the events leading to the engine failure that caused the passenger fatality and the injuries to other passengers, including Drs. Tyler and Alexis Albin, and the wife of Joe Arenas, occurred in New York prior to departure of Flight 1380. That was the last opportunity for Defendant Southwest Airlines to inspect, detect and correct the problem of a fractured fan blade that was about to cause the fatal engine failure of the Boeing 737 aircraft, or in the alternative to remove the Boeing 737 aircraft with the defective engine from service. All passengers boarded the aircraft in New York. Once the Boeing aircraft took off, the fatal incident was inexorable—indeed, it occurred just twenty minutes after liftoff from New York-LaGuardia Airport. Jurisdiction for this lawsuit is properly in New York where the cause of action arose, and it is proper in the Supreme Court of New York.

12.    Inasmuch as none of the parties reside in the State of New York, Plaintiff is permitted to designate the county of venue pursuant to CPLR § 503(a).

4

## **FACTUAL ALLEGATIONS**

### **Boeing's History**

13.     Founded in 1916, Boeing builds commercial aircraft and has dominated commercial aviation for decades.  Boeing has grown to become a corporate icon of America.

14.     Started in Europe in 1970, the Airbus company began as a minor manufacturer of commercial aircraft.  But its significance grew.  By 1999, when the airline JetBlue launched, it was made up exclusively of Airbus A320's.  In 2008, Airbus delivered 483 airplanes.  Boeing delivered only 375.  Airlines pay upwards of 100 million dollars for each Boeing plane.  Airbus had risen from obscurity and began challenging Boeing in the race for market share in commercial aviation which has caused Boeing to seek shortcuts in certifying aircraft which increase the danger to passengers.

15.     Boeing has been locked in a corporate struggle with Airbus over billions of dollars in commercial aviation profits.  The high stakes corporate war had real world consequences; lower sales for Boeing due to Airbus competition meant lower profits.  Lower profits meant smaller executive compensation packages for Boeing executives responsible for making operational and safety decisions.

16.     Boeing had tools at its disposal that provided it with advantages against Airbus.  Boeing knew how to work the certification process.    Boeing was close with the Federal Aviation Administration, (hereinafter, "FAA"), particularly with the office in Seattle.    Boeing stressed a corporate culture of speed to increase profits.    Boeing ignored or silenced the voices of whistleblowers who raised safety concerns resulting from these practices.

5

Case 1:19-cv-05761-PKC   Document 1-1   Filed 06/19/19   Page 64 of 150

17.     Over time, the tools that aided Boeing in the war with Airbus led to enormous profits as evidenced by Boeing's stock price.  In the past 10 years alone, Boeing's stock more than quadrupled in price from 100 to nearly 450 dollars per share.  With executives paid in huge chunks of stock, Boeing executives profited handsomely from the massive increase in share price.

18.     In 2018, the top 5 executives at Boeing each earned over 7 million dollars in base pay, bonuses, stocks and options.  Boeing's CEO Dennis Muilenburg made over $23 million, a 27% increase in his salary over the previous year.  $13.1 million of Muilenburg's salary was attributable to two bonus plans.  One bonus plan was tied to targets for free cash flow, per-share earnings and revenue that were all exceeded.  The other bonus plan was tied to a three-year economic profit goal which the company met.  Thus, the only compensation incentives for Boeing executives were to hit sales and profitability targets which motivated them to focus more on those goals than safety.

### Type Certification and the Boeing 737

19.     The Boeing 737 aircraft record of tragic crashes manifests Boeing's systemic failure to provide adequate safety for people who fly aboard the Boeing 737 aircraft.  This has caused 459 fatalities on Boeing 737 aircraft within the last 2 years.  It has also caused enormous financial losses for air carriers who relied upon Boeing aircraft.

20.     In 2011, American Airlines, a long-time loyal customer of Boeing, informed Boeing that it intended to place a large order for the newer fuel-efficient Airbus A320's.

21.     A few months later, in response to the Airbus pressure, Boeing conceived of a new fuel-efficient plane.  As it had done in the past, Boeing opted to make renovations on the existing 737 rather than build a new plane.  Like many of the predecessors including the 737-700, the 737-8 Max could be added to the 737 type certificate.  Instead of taking a decade to build and certify, it

6

would take only 5-6 years. Pilots could learn to use the new plane in a fraction of the time that it takes to train a pilot in the use of a new plane. It also costs a lot less money than developing a new model plane.

22. The first Boeing 737 received its type certification in 1967. It is certified under type certificate No. A16WE.

23. Southwest Flight 1380 was a Boeing 737-700 aircraft. The 737-700 is certified under Type Certificate No. A16WE; the same type certificate as the 737 in 1967.

24. Type Certificate No. A16WE covers the following "classic" models: 737-100, 737-200, 737-200C, 737-300, 737-400, 737-500.

25. Type Certificate No. A16WE covers the following "Next Generation" models: 737-600, 737-700, 737-800, 737-800BCF, 737-900, 737-900ER.

26. Type Certificate No. A16WE also covers the 737-8 Max and the 737-9 Max as amended.

27. In the race for commercial air supremacy, the use of type certification as a systematic shortcut to bring new products to market faster and cheaper gave Boeing a competitive advantage. Boeing also had close ties with the FAA

### Self-Certification of Aircraft by Boeing

28. Upon information and belief, over the course of time that Boeing has manufactured and sold Boeing 737 aircraft, the FAA, at the urging of Boeing, has delegated more and more authority to Boeing with respect to aircraft safety and certification. Boeing has enjoyed a collegial relationship with the FAA. In the global corporate race, Boeing's relationship with the FAA provided access to an inside track for certification of commercial aircraft.

7

29.     For decades, the FAA allowed Boeing engineers to oversee tests on Boeing aircraft and then vouch for the safety of Boeing aircraft.  A self-certification system is at odds with the role of a federal agency as the public's watchdog.  Indeed, other agencies have reported disturbing data concerning self-certification.

30.     In 1993, the Government Accountability Office (GAO) reported that Boeing had self-certified 95% of the Boeing 747-400.  In the 1990's, the Transportation Department, which oversees the FAA, conducted an audit in the 1990's and discovered that Boeing had inspected and certified 95% of the Boeing 777's itself.

31.     Self-certification provides Boeing an advantage in time-to-market, but the cost is close scrutiny of safety.  For example, some Boeing designs were sloppy, such as internal wiring instructions that do not specify which tools to use to install different wires.  It is customary to include such instructions.

32.     In 1991 and 1994, two 737's crashed in what became known as the "rudder hard-over" crashes.  The 737's had been certified with one power control unit and a single rudder panel.  Other commercial aircraft had at least two power control systems in case one failed.  Boeing had no such redundancy, so the two flights were doomed after a failure occurred.  Boeing admitted at a meeting with the FAA in 1992 that part of the 737 did not meet the "fail safe design intent".  Following the 1994 crash, Boeing recommended pilots get more training rather than implement the design changes recommended by the National Transportation Safety Board.

33.     Over the years, the relationship between Boeing and the FAA has grown even closer.  Until 2009, Boeing nominated the employees who vouched for safety.  In 2009, the rules changed, and Boeing selected those employees.

8

34.    In 2011, the same year the Boeing 787 Dreamliner was certified, the Transportation Department inspector general said in a report that the FAA "has not ensured engineers are adequately trained to perform their expanded enforcement responsibilities".

35.    After two incidents in January of 2013, the National Transportation Safety Board faulted the FAA for inadequate testing and failing to catch a design deficiency in the 787 Dreamliner Lithium-ion batteries.  The NTSB also noted that there was insufficient guidance for FAA engineers to use during the type certification process to ensure compliance with applicable requirements.

36.    A more recent example pertains to the Boeing 737 MAX aircraft and delegation by the FAA to Boeing of safety and certification authority regarding the "System Safety Analysis" on the Maneuvering Characteristics Augmentation System ("MCAS") which has since been identified as a contributing cause of recent crashes of the Boeing 737-8 MAX aircraft which have caused hundreds of fatalities and disrupted commercial aviation world wide.

**The Corporate Culture of Boeing is Greed**

37.    Boeing professes to put safety first, but the corporate culture says otherwise.  The 787 Dreamliner is manufactured at the Boeing facility in Charleston, South Carolina.  Complaints have arisen from defective manufacturing, debris left on planes and the pressure Boeing applied on its employees to not report violations.  Consequently, the Dreamliner has suffered from poor production and lack of oversight.

38.    Faulty parts have been installed in planes and tools have been left aboard planes.

39.    Metal shavings and slivers have been habitually left inside jets, often near electrical systems risking electrical shorts and fires.  The sharp metal shaving can potentially cut wires. On

9

Case 1:19-cv-05761-PKC   Document 1-1   Filed 06/19/19   Page 68 of 150

several planes, dangerous clusters of sharp metal slivers hanging over the wiring that commands the flight controls have been discovered.

40.     As complaints from employees have fallen on deaf ears, the risks of accidents caused by debris have increased.  The shavings may have been the cause for the damage to an in-service airplane on one occasion in 2012.

41.     The FAA issued a directive requiring 787 Dreamliners to be cleared of metal shavings before they are delivered.

42.     Compliance with such a directive is easily achievable so long as workers clean the bowels of the aircraft with a vacuum.

43.     Boeing has faced lawsuits from employees who claimed they were retaliated against for flagging manufacturing mistakes.

44.     As a direct result of Boeing's culture of pushing their employees, ignoring their complaints, and putting profits over the safety of the public, the safety of the passengers aboard the Dreamliner has suffered from inferior production and lack of oversight.

45.     The culture of concern for profits at the expense of safety at Boeing is not limited to the 787 Dreamliner.

46.     After finding a wrench, bolts and trash inside new planes, the Air Force halted deliveries of the KC-46 tanker, built at the Boeing facility in Everett, Washington.  The debris is a safety issue.

47.     Complaints originating from pilots are handled in another way.  Over the course of time that Boeing has manufactured and sold Boeing 737 aircraft, pilots who fly Boeing 737 aircraft for

10

various airlines have expressed concerns about the safety and airworthiness of Boeing 737 aircraft. Although Boeing had actual, or constructive knowledge of such concerns expressed by pilots, Boeing failed and refused to take action to address such concerns of the pilots.

48.    A recent example, upon information and belief, pertains to the Boeing 737 MAX aircraft and a pilot that expressed frustration that some systems, including the MCAS, are "inadequate and almost criminally insufficient" and that the lack of adequate information and training for pilots was "unconscionable."

49.    As a result of the desire for increasing profits, quality control has suffered, resulting in increasingly dangerous, and more frequent, airline incidents.  Boeing promotes this culture of speed; using non-union labor, systematically ignoring complaints of workers and firing potential whistleblowers.

50.    Boeing has profited from its conduct.  On January 30, 2019, Boeing reported profits of over  $100 billion for the first time in its history.  Boeing delivered a record 806 commercial aircraft in 2018.  Cutting costs and bringing products to market quickly pays lucrative financial dividends and hefty compensation packages for Boeing executives, but the price has been paid in human lives.

### A Growing Record of Incidents

51.    Minimizing certification barriers and promoting a culture of speed over safety, leads to errors.  And as the mounting record of incidents indicates, there have been more and more problems.  "Boeing has no higher priority than the safety of the flying public" according to Gordon Johndroe, a spokesman for Boeing.

52.    On March 3, 1991, a Boeing 737 operating as United Airlines flight 585 was on its turn to complete its final approach to land at Colorado Springs Municipal Airport when the nose pitched down until it reached nearly vertical attitude just before impact.  The National Transportation Safety Board (NTSB) determined the probable cause to be the loss of control of the airplane resulting from the rudder surface being deflected in a direction opposite to that commanded by the pilots as the result of a jam of the main rudder power control unit.  There were no survivors.

53.    On September 8, 1994, a Boeing 737-300 crashed while maneuvering to land in Pittsburgh, PA.  The NTSB determined the probable cause of the crash to be the same as United Airlines flight 585, loss of control as the result of a jam of the main rudder power control unit.  All 132 people on board were killed and the airplane was destroyed by impact forces and fire.  The NTSB recommended that Boeing change the design of the aircraft.  Ignoring the recommendation, Boeing recommended pilots get more training.

54.    On July 17, 1996, a Boeing 747-131 operating as flight TWA 800, killed all 230 people on board when it plunged into the Atlantic Ocean after takeoff from New York.  The NTSB determined that the most likely cause was a short circuit outside of the center wing fuel tank (CWT).  The NTSB further determined that a contributing factor to the accident was the design and certification concept of the CWT with heat sources located beneath it.

55.    On June 28, 2008, a Boeing 767-200 operating as cargo airplane flight 1611 from San Francisco International Airport caught fire before engine start up.  The NTSB determined the probable cause to be the design of the supplemental oxygen system hoses and the lack of positive separation between electrical wiring and electrically conductive oxygen system components.  The NTSB further noted that contributing to this accident was the failure to install nonconductive oxygen hoses.  The lack of positive separation allowed a short circuit to breach a combustible

12

oxygen hose, release oxygen, and initiate a fire in the supernumerary compartment that rapidly spread to other areas.

56.    On December 29, 2010 a Boeing 757-200 flying as American Airlines flight 2253, ran off the departure end of runway 19 at Jackson Hole Airport in Wyoming.  The National Transportation Safety Board determined the probable cause of the incident to be in part  a manufacturing defect in a clutch mechanism that prevented the speedbrakes from automatically deploying after touchdown.

57.    On April 1, 2011 a Boeing 737-3H4 flying as Southwest flight 812, conducted an emergency descent after suffering a rapid decompression.  An unidentified sound was recorded on the cockpit area microphone.  The captain called for oxygen masks as the cabin lost pressurization. A 2-foot hole in the fuselage was observed.  The NTSB determined the probable cause to be the improper installation of the fuselage skin panel at the S-4L lap joint during the manufacturing process, which resulted in multiple site damage fatigue cracking and eventual failure of the lower skin panel.

58.    On January 7, 2013, a Boeing 787 Dreamliner operated by Japan Airlines caught fire while it was parked at the gate at Logan International Airport in Boston.  The cause was a failure of the Auxillary Power unit (APU) a lithium-ion battery as referenced above.  Boeing was required to demonstrate that the 787's design complied with the FAA's special conditions.  Boeing performed its own safety assessment.  Boeing determined that the rate of occurrence of cell venting for the 787 battery would be about 1 in 10,000,000 flight hours.  The 787 Dreamliner had been in service for only 52,000 hours.

13

59.     On January 16, 2013, Boeing's gross miscalculation of the rate of the occurrence of cell venting came to the fore again when a second lithium-ion battery caught fire.  In that instance, a Boeing 787 Dreamliner operated by All Nippon Airways caught fire.  The FAA grounded the 787 fleet after the second incident.

60.     On September 8, 2015, 170 passengers and crew aboard British Airways Flight 2276, a Boeing 777-236 were forced to evacuate the aircraft in Las Vegas when an uncontained engine explosion occurred.  Cracks in the high-pressure compressor spool of the engine manufactured by General Electric caused the explosion.  Over four years earlier the FAA had warned both Boeing and General Electric about a design flaw in the engine that could result in cracks in the high-pressure compressor spool that could cause the very explosion that occurred and rain debris big enough to set the rest of the plane on fire.  Both Boeing and GE knew of the compressor spool issue but took no affirmative steps in 4 years to correct it.  If not for the quick-acting pilots who slammed on the brakes as the plane was headed down the runway; the plane, and all those on board, surely would have met with disaster.  The NTSB noted in its investigation that a contributing factor to the incident was the lack of inspection procedures.

61.     On August 27, 2016, in a precursor of Southwest flight 1380, a Boeing 737-7H4 operating as Southwest Airlines Flight 3472 made an emergency landing 12 minutes after takeoff.  The number one CFM International CFM56-7 engine suffered an uncontained engine failure.   Debris from the engine punctured the left side of the fuselage causing a loss of cabin pressure and damaged the wing and empennage.  A 5-inch by 16-inch hole was found in the fuselage.  This incident could have caused loss of the entire aircraft and all passengers.

62.     Upon information and belief, Boeing, and all the other Defendants, were aware of the engine explosion on Flight 3472; were aware of safety concerns with the CFM56-7B engines; were

14

aware of the dangerous propensity for such catastrophic engine failure, and the serious, potentially fatal, consequences resulting therefrom; and were aware of the imperative need for adequate monitoring, inspection, testing, service, maintenance and repair.

63.     On October 28, 2016, a fire occurred in the right engine of a Boeing 767-323 operating as American Airlines flight 383.  NTSB believed the cause to be a manufacturing anomaly not likely to be detected during inspections.

64.     On October 14, 2017, while travelling from Abu Dhabi to Sydney, the flight crew of a Boeing 777-300 observed a burning smell emanating from an air vent.  The plane was diverted to Adelaide.  Inspection found that a wiring bundle had been incorrectly routed, allowing it to chafe through the insulation, come into contact with screws and nut plates, and thus short-circuit the wires.  Boeing determined that the electrical routing error had occurred during the manufacture of the aircraft.  There had been 4 earlier reports involving wire chafing.

65.     On April 17, 2018, a Boeing 737-700, Southwest Airlines Flight 1380 left LaGuardia Airport.  Along with the other passengers on board the plane was the wife of Joe Arenas, and two newlyweds, Dr. Tyler Albin and his wife Dr. Alexis Albin, who were on their honeymoon.

**Southwest Flight 1380**

66.     Southwest Airlines Flight 1380 lifted off from New York-LaGuardia Airport bound for Dallas, Texas, with the ultimate intended destination of San Francisco ("Flight 1380").

67.     Upon information and belief, the Flight 1380 aircraft was a Boeing 737-700 with the registration N772SW (the "Aircraft"), manufactured by Defendant Boeing and sold to Defendant Southwest Airlines.

15

68.     Within twenty minutes after liftoff, the passengers heard a loud bang as if something on the Aircraft had exploded, or as if the Aircraft had collided with something in midair.

69.     Upon information and belief, the left engine of the Aircraft sustained a catastrophic fan blade failure and self-destructed, and the explosion projected metal fragments at high velocity against the fuselage and shattered a passenger window of the Aircraft.

70.     Instantly, the window collapsed resulting in explosive and violent decompression of the Aircraft cabin.

71.     The passenger nearest the window was sucked into the opening created by the shattered window and was trapped there in great agony.

72.     The passengers experienced the Aircraft begin to fall and roll as the oxygen masks came down.

73.     Debris was flying throughout the cabin, there was the smell of something burning, and passengers experienced extreme pain in their ears.

74.     During the excruciating moments following the explosion, Drs. Tyler and Alexis Albin, and the wife of Joe Arenas, endured the horrific fear of a plane crash—suddenly and unexpectedly they were facing death.

75.     Eventually, after great turmoil and anxiety for all onboard, the pilot, utilizing the only remaining engine, was able to bring the Aircraft under control and make an emergency landing at Philadelphia International Airport.

76.     After the Aircraft landed, the critically injured passenger trapped in the window was extricated and Dr. Tyler Albin attempted CPR to save her life while waiting for medics to arrive;

16

however, all efforts to save her life proved futile and hopeless. Dr. Albin ended up covered in her blood as a result of his efforts to perform CPR on her.

77.    The engine of the Boeing 737 and its protective cowling had not been designed with sufficient material, and sufficient structural integrity, to contain any shrapnel from a failed engine component and prevent it from penetrating the passenger cabin. This failure caused the death of the passenger who was sucked out the window, and the traumatic circumstances caused egregious damage to other passengers, including Drs. Tyler and Alexis Albin who were in the immediate proximity of the passenger who was killed, and to the wife of Joe Arenas.

78.    As a direct result of the frightful, death-threatening failure of the engine on the Boeing Aircraft, Drs. Tyler and Alexis Albin, as well as the wife of Joe Arenas suffered severe mental, emotional and psychological injuries, including post-traumatic stress disorder, and physical injuries.

79.    As a direct result of injuries suffered by his wife, Joe Arenas suffered loss of consortium due to the devastating impact upon their marital relationship, including disruption of a healthy and happy family life and resulting loss of support, services, companionship, affection, society, intimate relations and solace. Similarly, due to the injuries suffered by Drs. Tyler and Alexis Albin, they have suffered a loss of consortium for each other.

80.    The tragedy of flight 1380 is just one terrible chapter in the story of Boeing placing profits above safety. Dr. Tyler Albin and his wife Dr. Alexis Albin, as well as the wife of Joe Arenas, are just three of the hundreds of victims injured by this misconduct. There are hundreds more victims and even more recent, deadlier chapters.

17

## Incidents Involving  Boeing 737 Aircraft Continue

81.    On May 18, 2018, just over a month after the gruesome tragedy of flight 1380, Global Air

Flight 972, a Boeing 737 aircraft, crashed shortly after takeoff from Cuba and took the lives of

another 112 people.

82.    In October of 2018, Lion Air flight 610 jerked wildly in the air as pilots desperately fought

the Boeing navigation system for control of the aircraft.  Lion Air flight 610 was a 737-8 MAX.

The investigation currently points to a faulty Angle of Attack (AOA) sensor which was part of the

Boeing MCAS system as the cause.  There are two AOA sensors on each aircraft so that if one

sensor fails, it will disagree with the other sensor and a "disagree" alert will be sent to the pilot.

Though the redundant second sensor and "disagree" alert systems were installed on the planes,

Boeing did not activate them.  They were merely an option that Airlines had to pay extra for.

Airlines believed that they were standard equipment.  Since 2004, AOA sensors had been reported

and flagged to the FAA over 200 times on the FAA Service Difficulty reporting site.  They were

flagged for requiring adjustment, repairing or failing.  Investigators of the Lion Air 610 crash

believe the Angle of Attack sensor incorrectly sensed the plane had rolled up, causing the MCAS

system to pitch the nose of the plane down.  The pilots fought to override the MCAS system over

20 times but lost the battle.  The 737 did a nose-dive into the sea, plunging all the passengers and

crew aboard to their deaths.

83.    In March of 2019, pilots flying another Boeing 737-8 Max operating as Ethiopian Flight

302 again battled the MCAS.  A faulty AOA sensor is again blamed.  Again, everyone aboard

plummeted to their deaths.  Regulatory agencies around the world grounded the 737-8 Max planes.

Well after authorities from around the world grounded the 737-8 Max, the FAA finally followed

suit and grounded the plane. Boeing then announced it would make the "disagree" alert system operational and standard on all the planes.

84.    Boeing's bestselling product, the 737-8 Max remains grounded worldwide. Public confidence in the aircraft maker is shaken. As pressure builds and the bottom line is jeopardized, Boeing now moves to address the numerous issues with its planes. One issue concerns the slat track assembly. Boeing announced that the 737 MAX and the older model NG may also have faulty parts on the wings that could crack and damage the aircraft while in use. The FAA announced that more than 300 of the MAX airplanes and an older model 737 may contain such improperly manufactured parts.

85.    In an interview with CBS, Boeing's CEO Dennis Muilenburg claimed that safety is the highest priority of the corporation and apologized to consumers admitting that Boeing had made mistakes. One of those mistakes being that Boeing was aware that the "disagree" light which caused the accident was not active on all flights in 2017 but neglected to inform the FAA for 13 months.

86.    Another mistake was changing the role of the MCAS system without disclosing the changes for the FAA who determined the pilot training needs. The original MCAS was supposed to only activate in rare high-speed moves, and it relied on multiple sensors before it activated to nudge the plane down. This version of the MCAS, the quiet back up system in the background, was approved by the FAA. After testing the new MAX pilots discovered that the larger engines of the plane made handling more difficult. In response to the critique, Boeing expanded the role and parameters of the MCAS, giving the system more power to nudge the plane down harder and allowing it to activate not just in high speed situations to avoid stalls. In a rush to get the plane done, the new MCAS system relied on a single AOA sensor, believing the AOA sensor could only

19

be damaged in the rarest of occasions, such as a bird strike. Since 1990, there have been 1,172 instances of bird strikes on planes, with 122 strikes on AOA sensors. As Boeing rushed to get the plane completed, Boeing never disclosed the changes to the FAA officials who determined pilot training needs. Under pressure to finish the project, Boeing asked to remove the description of the MCAS system from the pilot's manual. This would have required more training. The FAA agreed to the Boeing request, believing the MCAS to be the original version. Thus, after the Lion Air crash most MAX pilots were unaware of the existence of the MCAS software on the plane. To leave the MCAS system in the pilot's manual would have made the plane less marketable as more time would have been required for pilot training. The MCAS software would now more aggressively take charge of a plane, relying on a single AOA sensor that could be compromised.

87.    Boeing had knowledge of its systemic failure to provide adequate safety for Boeing 737 aircraft, free of negligence, defective and unreasonably dangerous design and manufacture, and free of failure to provide adequate warnings and safety instructions; and was aware of the enormous cost of such failure in human lives lost and the suffering endured by survivors such as that inflicted upon the Plaintiffs in this case.

88.    As the timeline above illustrates, the number and frequency of aircraft incidents continues to increase. The culture, practices, and customs at Boeing keep the company profitable but at the cost of increased risk to the passenger. Boeing must be held accountable to alleviate the jeopardy the company has created for the traveling public. The timeline further demonstrates that Boeing only responds to problems once profitability is threatened.

89.    Boeing has been sued in a class action by its shareholders in which they allege that Boeing has covered up problems with the 737 and that the plane maker "effectively put profitability and growth ahead of airplane safety and honesty." The shareholders are suing Boeing for securities

20

fraud. In that suit, shareholders claim that Boeing made false and misleading statements about the company's operations, its growth and its safety record which inflated its market value.

90. Despite the systematic failures to manage aircraft safety, no Boeing executive has been terminated or disciplined by the company for failures in these critical duties.

<b>The Defendants</b>

91. At all relevant times, Defendant Boeing was an aircraft manufacturer engaged in the business of manufacturing and selling commercial aircraft to be used for transporting paying passengers by air.

92 At all relevant times, Defendant Southwest Airlines was a common carrier engaged in the business of transporting paying passengers by air.

93. Upon information and belief, at all relevant times Defendants GE Aviation Systems, LLC, Safran USA, Inc. and CFM International, Inc. (collectively "Defendant Engine Manufacturers") were jointly engaged in the design, development, manufacture and sale of aircraft engines to be installed on aircraft used for transporting paying passengers by air.

94. Upon information and belief, the Boeing Aircraft was powered by CFM56-7B engines which were manufactured by Defendant Engine Manufacturers; the engines, including the engine that failed (the "Engine") was sold to Boeing; and Boeing installed the Engine on the Boeing Aircraft that it sold to Defendant Southwest Airlines.

21

# FIRST CAUSE OF ACTION
## NEGLIGENCE AGAINST DEFENDANT BOEING

95.     Plaintiffs incorporate by reference the factual allegations in the preceding paragraphs as if fully set forth herein.

96.     Boeing, in its business of designing, developing, manufacturing and selling aircraft, including the component engines, had a duty to assure that its aircraft were reasonably safe for the passengers flying therein, whose safety and lives are at risk, including the duty to provide warnings and safety instructions for monitoring, inspecting, testing, servicing, maintaining and repairing the aircraft, including component engines.

97.     Boeing negligently failed to assure that the Boeing Aircraft and the component Engine sold to Southwest Airlines was reasonably safe; and Boeing failed to provide adequate warnings and safety instructions for monitoring, inspecting, testing, servicing, maintaining and repairing the Boeing Aircraft and the Engine for passenger safety, and to properly monitor and inspect the work of its subcontractors.

98.     Boeing's negligence was the direct and proximate cause of the engine failure and the resulting injuries and damages suffered by Drs. Tyler and Alexis Albin, and the wife of Joe Arenas.

99.     As a direct and proximate result of the negligence of Boeing, Drs. Tyler and Alexis Albin suffered, and will continue to suffer, severe emotional and psychological injuries, including post-traumatic stress disorder, and physical injuries and resulting expenses and damages, as well as a loss of consortium, the amount of which is undetermined at this time.

100.     Joe Arenas was not a passenger on Flight 1380, but he suffered the loss of consortium of his wife, due to the devastating impact upon their marital relationship, including disruption of a

22

healthy and happy family life and resulting loss of support, services, companionship, affection, society, intimate relations and solace.

101    By reason of the foregoing, Boeing is liable to Drs. Tyler and Alexis Albin for compensatory damages, including loss of consortium, and to Joe Arenas for loss of consortium, in sums to be determined at trial.

## SECOND CAUSE OF ACTION
## STRICT PRODUCT LIABILITY AGAINST DEFENDANT BOEING

102.    Plaintiffs incorporate by reference the factual allegations in the preceding paragraphs as if fully set forth herein.

103.    Defendant Boeing, in its business of designing, developing, manufacturing and selling aircraft, including the component engines, had a duty to assure that its aircraft were not defective and unreasonably dangerous for the passengers flying therein, whose safety and lives are at risk.

104.    Defendant Boeing had the duty to provide adequate warnings and safety instructions for its customer, Defendant Southwest Airlines, to monitor, inspect, test, service, maintain and repair the Aircraft and the component Engine.

105.    The Boeing Aircraft and the component Engine sold by Defendant Boeing to Defendant Southwest Airlines was defective and unreasonably dangerous in design and manufacture, and was defective and unreasonably dangerous with regard to the inadequacy of warnings and safety instructions for monitoring, inspecting, testing, servicing, maintaining and repairing the Aircraft and the Engine for passenger safety.

106.    Defendant Boeing's systemic failure to provide Boeing 737 aircraft free of defective and unreasonably dangerous design and manufacture, and failure to provide adequate warnings and safety instructions, is manifested by horribly tragic crashes, the most recent being Ethiopian Airlines Flight 302 that crashed in Ethiopia on March 10, 2019 and took the lives of 157 people; the Lion Air Flight 610 that crashed in the sea off the coast of Indonesia on October 29, 2018 and killed 189 people; and Global Air Flight 972 that crashed in Mexico on May 18, 2018 with 112 fatalities.

107.    The engine explosion on Flight 1380 that is the subject of this case was forewarned by a similar engine explosion on a Boeing 737 aircraft, about a year and a half earlier, involving Southwest Airlines Flight 3472 on August 27, 2016 in Florida, which caused severe damage to the plane.

108.    Defendant Boeing had knowledge of its systemic failure to provide Boeing 737 aircraft free of defective and unreasonably dangerous design and manufacture, and failure to provide adequate warnings and safety instructions, for Boeing 737 aircraft, and was aware of the cost of such failure in human lives loss and the suffering endured by survivors such as that inflicted upon the Plaintiffs in this case.

109.    The defective and unreasonably dangerous Aircraft, including the Engine and the inadequate warnings and safety instructions, from Defendant Boeing was the direct and proximate cause of the engine failure and the resulting injuries suffered by Drs. Tyler and Alexis Albin, and the wife of Joe Arenas.

110.    As a direct and proximate result of the foregoing, Drs. Tyler and Alexis Albin suffered, and will continue to suffer, severe emotional and psychological injuries, including post-traumatic

24

Case 1:19-cv-05761-PKC   Document 1-1   Filed 06/19/19   Page 83 of 150

stress disorder, and physical injuries and resulting expenses and damages, as well as loss of consortium, the amount of which is undetermined at this time.

111.    Plaintiff Joe Arenas was not a passenger on Flight 1380, but he suffered the loss of consortium of his wife, due to the devastating impact upon their marital relationship, including disruption of a healthy and happy family life and resulting loss of support, services, companionship, affection, society, intimate relations and solace.

112.    By reason of the foregoing, Defendant Boeing is liable to Drs. Tyler and Alexis Albin for compensatory damages, including loss of consortium, and to Joe Arenas for loss of consortium, in sums to be determined at trial.

## THIRD CAUSE OF ACTION
## NEGLIGENCE AGAINST DEFENDANT SOUTHWEST AIRLINES

113.    Plaintiffs incorporate by reference the preceding factual allegations as if fully set forth herein.

114.    As a common carrier airline transporting passengers for a fee, Defendant Southwest Airlines had a duty to provide the highest degree of care for its passengers, whose very lives were at risk.

115.    Defendant Southwest Airlines had a duty to reasonably monitor, inspect, test, service, maintain and repair the Aircraft and the Engine to keep its aircraft reasonably safe for its passengers, or to remove from service aircraft that were not reasonably safe.

25

116.    Defendant Southwest Airlines negligently failed in its duty to provide the highest degree of care for its passengers whose lives were at risk; and further failed in its duty to provide even a reasonable degree of care for its passengers.

117.    Defendant Southwest Airlines' negligently failed to reasonably monitor, inspect, test, service, maintain and repair the Aircraft and the Engine to keep its aircraft reasonably safe for its passengers, and to remove from service aircraft that were not reasonably safe.

118.    Defendant Southwest Airlines' negligence was the direct and proximate cause of the engine failure and the resulting injuries and damages suffered by Drs. Tyler and Alexis Albin, and the wife of Joe Arenas, and the resulting loss of consortium suffered by Plaintiff Joe Arenas.

119.    As a direct and proximate result of the negligence of Defendant Southwest Airlines, Drs. Tyler and Alexis Albin suffered, and will continue to suffer, severe mental, emotional and psychological injuries, including post-traumatic stress disorder, and physical injuries and resulting expenses, losses and damages, as well loss of consortium, the amount of which is undetermined at this time.

120.    Plaintiff Joe Arenas was not a passenger on Flight 1380, but he suffered the loss of consortium of his wife due to the devastating impact upon their marital relationship, including disruption of a healthy and happy family life and resulting loss of support, services, companionship, affection, society, intimate relations and solace.

121.    By reason of the foregoing, Defendant Southwest Airlines is liable to Drs. Tyler and Alexis Albin for compensatory damages, including loss of consortium, and to Plaintiff Joe Arenas for loss of consortium, in sums to be determined at trial.

26

## FOURTH CAUSE OF ACTION

## BREACH OF CONTRACT (INCLUDING EXPRESS AND IMPLIED WARRANTIES) AGAINST DEFENDANT SOUTHWEST AIRLINES

122.    Plaintiffs incorporate by reference the factual allegations in the preceding paragraphs as if fully set forth herein.

123.    As a common carrier airline transporting passengers for a fee, Defendant Southwest Airlines contracted with its passengers, including Drs. Tyler and Alexis Albin, and the wife of Joe Arenas, to provide air transportation with aircraft that are reasonably safe for its passengers.

124.    Pursuant to its contractual obligations, including express and implied warranties, Defendant Southwest Airlines had a duty to reasonably monitor, inspect, test, service, maintain and repair the Aircraft and the Engine to keep its aircraft reasonably safe for its passengers, and to remove from service aircraft that were not reasonably safe.

125.    Defendant Southwest Airlines' failed to perform pursuant to its contractual obligations, including express and implied warranties, to reasonably monitor, inspect, test, service, maintain and repair the Aircraft and the Engine to keep its aircraft reasonably safe for its passengers, and to remove from service aircraft that were not reasonably safe.

126.    As a result of Defendant Southwest Airlines' breach of contract, including express and implied warranties, Drs. Tyler and Alexis Albin suffered, and will continue to suffer, severe mental, emotional and psychological injuries, including post-traumatic stress disorder, and physical injuries and resulting expenses, losses and damages, as well as loss of consortium, the amount of which is undetermined at this time.

27

127.    Plaintiff Joe Arenas was not a passenger on Flight 1380, but he suffered the loss of consortium of his wife, due to the devastating impact upon their marital relationship, including disruption of a healthy and happy family life and resulting loss of support, services, companionship, affection, society, intimate relations and solace.

128.    By reason of the foregoing, Defendant Southwest Airlines is liable to Drs. Tyler and Alexis Albin for compensatory damages, including loss of consortium, and to Joe Arenas for loss of consortium, in sums to be determined at trial.

## FIFTH CAUSE OF ACTION
## NEGLIGENCE AGAINST DEFENDANTS GE AVIATION SYSTEMS, SAFRAN USA, AND CFM INTERNATIONAL

129.    Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

130.    Defendants GE Aviation Systems, Safran USA and CFM International (collectively "Defendant Engine Manufacturers"), in their business of designing, developing, manufacturing and selling engines for aircraft, had a duty to assure that their engines were reasonably safe for the passengers flying in aircraft powered by their engines, and whose safety and lives are at risk; including the duty to provide warnings and safety instructions for monitoring, inspecting, testing, servicing, maintaining and repairing the engines.

131.    Defendant Engine Manufacturers negligently failed to assure that the Engine sold to Defendant Boeing and installed on the Aircraft Boeing sold to Southwest Airlines was reasonably safe; and it negligently failed to provide adequate warnings and safety instructions for monitoring, inspecting, testing, servicing, maintaining and repairing the Engine for passenger safety.

28

132.     Defendant Engine Manufacturers' negligence was the direct and proximate cause of the engine failure and the resulting injuries and damages suffered by Drs. Tyler and Alexis Albin, and the wife of Joe Arenas.

133.     As a direct and proximate result of the negligence of Defendant Engine Manufacturers, Drs. Tyler and Alexis Albin suffered, and will continue to suffer, severe mental, emotional and psychological injuries, including post-traumatic stress disorder, and physical injuries and resulting expenses and damages, as well as loss of consortium, the amount of which is undetermined at this time.

134.     Plaintiff Joe Arenas was not a passenger on Flight 1380, but he suffered the loss of consortium of his wife due to the devastating impact upon their marital relationship, including disruption of a healthy and happy family life and resulting loss of support, services, companionship, affection, society, intimate relations and solace.

135.     By reason of the foregoing, Defendant Engine Manufacturers are liable to Drs. Tyler and Alexis Albin for compensatory damages, including loss of consortium, and to Joe Arenas for loss of consortium, in sums to be determined at trial

## SIXTH CAUSE OF ACTION
## STRICT PRODUCT LIABILITY AGAINST DEFENDANTS GE AVIATION SYSTEMS, SAFRAN USA, AND CFM INTERNATIONAL

136.     Plaintiffs incorporate by reference the factual allegations in the preceding paragraphs as if fully set forth herein.

137.     Defendant Engine Manufacturers, in their business of designing, developing, manufacturing and selling engines for aircraft, had a duty to assure that its engines were not

29

defective and unreasonably dangerous for the passengers flying in aircraft powered by their engines, whose safety and lives are at risk.

138.    Defendant Engine Manufacturers had the duty to provide adequate warnings and safety instructions for its ultimate customer, Defendant Southwest Airlines, to monitor, inspect, test, service, maintain and repair the Engine.

139.    The Engine sold by Defendant Engine Manufacturers to Defendant Boeing and installed on the aircraft sold by Defendant Boeing to Defendant Southwest Airlines was defective and unreasonably dangerous in design and manufacture, and was defective and unreasonably dangerous with regard to the inadequacy of warnings and safety instructions for monitoring, inspecting, testing, servicing, maintaining and repairing the Engine for passenger safety.

140.    The defective and unreasonably dangerous Engine and the inadequate warnings and safety instructions, from Defendant Engine Manufacturers was the direct and proximate cause of the engine failure and the resulting injuries suffered by Drs. Tyler and Alexis Albin, and the wife of Joe Arenas.

141.    As a direct and proximate result of the foregoing, Drs. Tyler and Alexis Albin suffered, and will continue to suffer, severe emotional and psychological injuries, including post-traumatic stress disorder, and physical injuries and resulting expenses and damages, as well as loss of consortium, the amount of which is undetermined at this time.

142.    Plaintiff Joe Arenas was not a passenger on Flight 1380, but he suffered the loss of consortium of his wife, due to the devastating impact upon their marital relationship, including disruption of a healthy and happy family life and resulting loss of support, services, companionship, affection, society, intimate relations and solace.

143.    By reason of the foregoing, Defendant Engine Manufacturers are liable to Drs. Tyler and Alexis Albin for compensatory damages, including loss of consortium, and to Joe Arenas for loss of consortium, in sums to be determined at trial.

## SEVENTH CAUSE OF ACTION
## PUNITIVE DAMAGES AGAINST DEFENDANT BOEING

144.    Plaintiffs incorporate by reference the factual allegations in the preceding paragraphs as if fully set forth herein.

145.    Defendant Boeing's systemic failure to provide Boeing 737 aircraft free of defective and unreasonably dangerous design and manufacture, and failure to provide adequate warnings and safety instructions, is manifested by horribly tragic crashes, the most recent being Ethiopian Airlines Flight 302 that crashed in Ethiopia on March 10, 2019 and took the lives of 157 people; the Lion Air Flight 610 that crashed in the sea off the coast of Indonesia on October 29, 2018 and killed 189 people; and Global Air Flight 972 that crashed in Mexico on May 18, 2018 with 112 fatalities.  It has also caused catastrophic economic damages to air carriers worldwide.

146.    The engine explosion on Flight 1380 that is the subject of this case was foreshadowed by a similar engine explosion on a Boeing 737 aircraft, about a year and a half earlier, involving Southwest Airlines Flight 3472 on August 27, 2016 in Florida, which caused severe damage to the plane.  Fortuitously, the pilot was able to make an emergency landing and avoid loss of life.

147.    Defendant Boeing had knowledge of its systemic failure to provide all models of Boeing 737 aircraft free of defective and unreasonably dangerous design and manufacture, and failure to provide adequate warnings and safety instructions, for Boeing 737 aircraft; and Defendant Boeing was aware of the enormous cost of such failure in human lives loss and the suffering endured by survivors such as that inflicted upon the Plaintiffs in this case.

31

148.    Upon information and belief, Defendant Boeing was aware of safety concerns with the CFM56-7B engines and the imperative need for adequate monitoring, inspection, testing, service, maintenance and repair.

149.    Specifically, in September 2016 Defendant Southwest Airlines experienced an engine failure of the same type (broken fan blade), on the same type engine (CFM56-7B), on the same type aircraft (Boeing 737-700), as with Flight 1380 (the "2016 Engine Failure").

150.    Upon information and belief, all Defendants, including Defendant Boeing, were aware of the "2016 Engine Failure" and the dangerous propensity for such catastrophic engine failure, and the serious, potentially fatal, consequences resulting therefrom.

151.    Defendant Boeing's willful, wanton and/or reckless conduct as set forth herein was the direct and proximate cause of the engine failure and the resulting injuries and damages suffered by Drs. Tyler and Alexis Albin, and the wife of Joe Arenas, and Plaintiff Joe Arenas for loss of consortium.

152.    By reason of the foregoing, Defendant Boeing is liable to all Plaintiffs for punitive damages.  Though no specific amount can be requested, as damages should be set by the enlightened conscience of the jury, Plaintiff believes that damages for this misconduct must at a minimum be $1 billion given the extreme loss of life and economic damages that have resulted from Boeing's willful misconduct.

32

## EIGHTH CAUSE OF ACTION

## PUNITIVE DAMAGES AGAINST DEFENDANTS SOUTHWEST AIRLINES; GE AVIATION SYSTEMS; SAFRAN USA; AND CFM INTERNATIONAL

153.    Plaintiffs incorporate by reference the factual allegations in the preceding paragraphs as if fully set forth herein.

154.    Upon information and belief, all Defendants were aware of safety concerns with the CFM56-7B engines and the imperative need for adequate monitoring, inspection, testing, service, maintenance and repair.

155.    Specifically, in September 2016 Defendant Southwest Airlines experienced an engine failure of the same type (broken fan blade), on the same type engine (CFM56-7B), on the same type aircraft (Boeing 737-700), as with Flight 1380 (the "2016 Engine Failure").

156.    Upon information and belief, all Defendants were aware of the "2016 Engine Failure" and the dangerous propensity for such catastrophic engine failure, and the serious, potentially fatal, consequences resulting therefrom.

157.    Upon information and belief, following the 2016 Engine Failure, the Defendant Engine Manufacturers made a meager effort to address the danger by issuing a technical bulletin urging its customers, including Defendant Southwest Airlines, to conduct more frequent ultrasonic inspections of the engine fan.

158.    Upon information and belief, the Defendant Engine Manufacturers did nothing more to address the known danger inherent in the subject engines for the protection of passengers on aircraft that were powered by the subject engines.

159.    Upon information and belief, Defendant Southwest Airlines did nothing to address the known danger inherent in the subject engines for the protection of passengers on it flights with aircraft that were powered by the subject engines.

160.    Upon information and belief, Defendant Southwest Airlines failed and refused to comply with the Defendant Engine Manufacturer's bulletin, and it did not conduct ultrasonic inspections of the engine fan as urged by such bulletin.

161.    Defendant Southwest Airlines' failure and refusal to comply with the Engine Manufacturer's safety bulletin, and its failure and refusal to take any action to address the known danger inherent in the subject engines, constituted willful or wanton negligence, and/or recklessness, and/or manifested a conscious disregard of the safety of its passengers, and/or conduct so reckless as to amount to such disregard.

162.    Defendant Engine Manufacturers' failure and refusal to take any action to address the known danger inherent in the subject engines for the safety of passengers on aircraft powered by the subject engines it sold, other than the mere publication of a bulletin, constituted willful or wanton negligence, and/or recklessness, and/or manifested a conscious disregard of the safety of its passengers, and/or conduct so reckless as to amount to such disregard.

163.    Defendant Southwest Airlines' willful, wanton and/or reckless conduct as set forth herein was the direct and proximate cause of the engine failure and the resulting injuries and damages suffered by Drs. Tyler and Alexis Albin, and the wife of Joe Arenas, and Plaintiff Joe Arenas for loss of consortium.

164.    By reason of the foregoing, Defendant Southwest Airlines is liable to all Plaintiffs for punitive damages in a sum to be determined by a jury at trial.

34

Case 1:19-cv-05761-PKC   Document 1-1   Filed 06/19/19   Page 93 of 150

165.   Defendant Engine Manufacturers' willful, wanton and/or reckless conduct as set forth herein was the direct and proximate cause of the engine failure and the resulting injuries and damages suffered by Drs. Tyler and Alexis Albin, and the wife of Joe Arenas, and Plaintiff Joe Arenas for loss of consortium.

166.   By reason of the foregoing, Defendant Engine Manufacturers are liable to all Plaintiffs for punitive damages in a sum to be determined by a jury at trial.

## NINTH CAUSE OF ACTION
## LOSS OF CONSORTIUM

167.   Plaintiffs incorporate by reference the factual allegations in the preceding paragraphs as if fully set forth herein.

168.   Drs. Tyler and Alexis Albin are, and at all relevant times were, married.

169.   Drs. Tyler and Alexis Albin have suffered, and will continue to suffer, loss of consortium, including devastating impact upon their marital relationship, and disruption of a healthy and happy family life and resulting loss of support, services, companionship, affection, society, intimate relations, solace and other physical, emotional and psychological harm inflicted upon the martial relationship as a result of the Flight 1380 incident.

170.   Each Defendant's actions and/or omissions as alleged herein were the direct, proximate, legal cause of the loss of consortium suffered by Drs. Tyler and Alexis Albin.

171.   Drs. Tyler and Alexis Albin are entitled to an award for past and future loss of consortium, for the harm inflicted upon the martial relationship as a result of the Flight 1380 incident, and other damages according to law.

35

172.     Plaintiff Joe Arenas and his wife, Cindy Arenas, are, and at all relevant times were, married.

173.     Plaintiff Joe Arenas has suffered, and will continue to suffer, loss of consortium, including devastating impact upon their marital relationship, and disruption of a healthy and happy family life and resulting loss of support, services, companionship, affection, society, intimate relations, solace and other physical, emotional and psychological harm inflicted upon the martial relationship as a result of the Flight 1380 incident.

174.     Each Defendant's actions and/or omissions as alleged herein were the direct, proximate, legal cause of the loss of consortium suffered by Plaintiff Joe Arenas.

175.     Plaintiff Joe Arenas is entitled to an award for past and future loss of consortium for the harm inflicted upon the martial relationship as a result of the Flight 1380 incident, and other damages according to law.

## TENTH CAUSE OF ACTION
## VIOLATION OF GENERAL BUSINESS LAW SECTION 349

176.     Plaintiffs incorporate by reference the factual allegations in the preceding paragraphs as if fully set forth herein.

177.     Defendants, Boeing, Southwest Airlines, GE Aviation Systems, Safran USA, and CFM International engaged in deceptive and misleading acts and practices, in their business of designing, developing, manufacturing and selling engines for aircraft and providing transportation as a common carrier, to consumers and the public at large.

36

178.    Defendants, Boeing, Southwest Airlines, GE Aviation Systems, Safran USA, and CFM's egregious conduct oriented towards the consumer is the direct and proximate cause of the damages suffered by Drs. Tyler and Alexis Albin, as well as Joe Arenas.

179.    As a result of the foregoing, the protection of the consumer has been compromised and consumer confidence in the ability of the defendants to provide safe transportation has suffered.

180.    As a direct and proximate result of the foregoing, Drs. Tyler and Alexis Albin suffered, and will continue to suffer, severe emotional and psychological injuries, including post-traumatic stress disorder, physical injuries and resulting expenses and damages, as well as loss of consortium, the amount of which is undetermined at this time.

181.    By reason of the foregoing, Defendants Boeing, Southwest Airlines, GE Aviation Systems, Safran USA, and CFM International are liable to Drs. Tyler and Alexis Albin for treble actual damages suffered up to the stated limit under New York General Business Law Section 349(h) and punitive damages.

## ELEVENTH CAUSE OF ACTION

## FRAUD

182    Plaintiffs incorporate by reference the factual allegations in the preceding paragraphs as if fully set forth herein.

183.    Defendants, Boeing, Southwest Airlines, GE Aviation Systems, Safran USA, and CFM International engaged in fraudulent acts and practices, in their business of designing, developing, manufacturing and selling engines for aircraft and providing transportation as a common carrier, to consumers and the public at large.

37

184. Defendants have engaged in both actual and constructive fraud with respect to representations that they have made to the public regarding the safety of their operations and the Boeing 737 aircraft.

185. Defendants have made intentional and negligent misrepresentations regarding the safety of their operations and the Boeing 737 aircraft and its engines. In a statement regarding the building of the 737 Max, Boeing stated, "that safety is our highest priority as we design, build, and support our airplanes."

186. Plaintiffs reasonably relied upon the representations made by Defendants with respect to the safety of their operations and the Boeing 737 aircraft in purchasing their fare for passage on the subject Boeing 737 aircraft.

187. As a result of their reliance upon statements made by defendants, plaintiffs have been caused to suffer damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

1.       For compensatory or general damages in an amount according to proof for Plaintiffs Drs. Tyler and Alexis Albin;

2.       For special and economic damages, including past and future expenses, according to proof for Plaintiffs Drs. Tyler and Alexis Albin;

3.       For loss of consortium suffered by all Plaintiffs;

4.       For punitive damages for all Plaintiffs against Defendant Boeing and all other defendants in an amount to be determined by the enlightened conscience of the jury;

38

5.       For costs and attorney's fees of suit incurred herein;

6.       For such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

**Jonathan W. Johnson, LLC**           */s/ Jonathan W. Johnson*
2296 Henderson Mill Road, Suite 304     Jonathan W. Johnson
Atlanta, GA 30345                  New York Bar Number: 2543189
404.298.0795 Telephone             *Attorney for Plaintiffs*
404.941.2285 Facsimile
jwj@jonathanjohnsonatlantalawyer.com

**The James Law Firm, PLLC**        */s/ Jacqueline M. James*
445 Hamilton Avenue, Suite 1102      Jacqueline M. James
White Plains, New York 10601         New York Bar Number: 2384220
914.358.6423 Telephone             *Attorney for Plaintiffs*
914.358.6424 Facsimile
jjameslaw@optonline.net

# EXHIBIT A-15

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF   NEW YORK

---

Dr. Lance Tyler Albin; Dr. Alexis Victoria Albin; and Joe Leo
Arenas

                              Plaintiff(s),

                  -against-

The Boeing Company; Southwest Airlines Co.; GE Aviation
Systems, LLC; Safran USA, Inc.; and CFM International,
Inc.

                              Defendant(s).

---

Index No.   155786/2018

𝔖ummons

Date Index No. Purchased:

To the above named Defendant(s)

Southwest Airlines Co.
Corporation Service Company
80 State Street, Albany, New York 12207

You are hereby summoned to answer the complaint in this action and to serve
a copy of your answer, or, if the complaint is not served with this summons, to serve
a notice of appearance, on the Plaintiff's attorney within 20 days after the service of
this summons, exclusive of the day of service (or within 30 days after the service is
complete if this summons is not personally delivered to you within the State of New
York); and in case of your failure to appear or answer, judgment will be taken against
you by default for the relief demanded in the complaint.

The basis of venue is   where the cause of action arose
which is   permitted pursuant to New York Consolidated Laws, Civil Practice Law and Rules CVP § 503(a).

Dated:  Atlanta, Georgia

        June 4, 2019

                              Jonathan W. Johnson, LLC

                              by  /s/ Jonathan W. Johnson
                              Jonathan W. Johnson
                              Attorneys for Plaintiff
                              Dr. Lance Tyler Albin, Dr. Alexis Victoria Albin,
                              and Joe Leos Arenas

                              Jonathan W. Johnson, LLC
                              2296 Henderson Mill Rd., Suite 406
                              Atlanta, Georgia 30345

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF   NEW YORK

------------------------------------------------------

Dr. Lance Tyler Albin; Dr. Alexis Victoria Albin; and Joe Leo
Arenas

                                          Plaintiff(s),

                   -against-

The Boeing Company; Southwest Airlines Co.; GE Aviation
Systems, LLC; Safran USA, Inc.; and CFM International,
Inc.

                                Defendant(s).

------------------------------------------------------

Index No.   155786/2018

## Summons

Date Index No. Purchased:

     To the above named Defendant(s)

       Safran USA, Inc.
       Corporation Service Company
       80 State Street, Albany, New York 12207

     You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

     The basis of venue is   where the cause of action arose
which is   permitted pursuant to New York Consolidated Laws, Civil Practice Law and Rules CVP § 503(a).

Dated:   Atlanta, Georgia

      June 4, 2019

                          Jonathan W. Johnson, LLC

                          by  /s/ Jonathan W. Johnson
                          Jonathan W. Johnson
                      Attorneys for Plaintiff
                          Dr. Lance Tyler Albin, Dr. Alexis Victoria Albin,
                          and Joe Leos Arenas

                          Jonathan W. Johnson, LLC
                          2296 Henderson Mill Rd., Suite 406
                          Atlanta, Georgia 30345

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF  NEW YORK

-----------------------------------------------

Dr. Lance Tyler Albin; Dr. Alexis Victoria Albin; and Joe Leo
Arenas

                              Plaintiff(s),

                -against-

The Boeing Company; Southwest Airlines Co.; GE Aviation
Systems, LLC; Safran USA, Inc.; and CFM International,
Inc.

                              Defendant(s).

-----------------------------------------------

Index No.   155786/2018


𝔖𝔲𝔪𝔪𝔬𝔫𝔰


Date Index No. Purchased:


         To the above named Defendant(s)

           GE Aviation Systems, LLC
           CT Corporation System
           111 Eight Avenue, New York, New York 10011

      You are hereby summoned to answer the complaint in this action and to serve
a copy of your answer, or, if the complaint is not served with this summons, to serve
a notice of appearance, on the Plaintiff's attorney within 20 days after the service of
this summons, exclusive of the day of service (or within 30 days after the service is
complete if this summons is not personally delivered to you within the State of New
York); and in case of your failure to appear or answer, judgment will be taken against
you by default for the relief demanded in the complaint.

      The basis of venue is   where the cause of action arose
which is    permitted pursuant to New York Consolidated Laws, Civil Practice Law and Rules CVP § 503(a).


Dated:  Atlanta, Georgia

         June 4, 2019

                              Jonathan W. Johnson, LLC

                              by  /s/ Jonathan W. Johnson
                              Jonathan W. Johnson
                              Attorneys for Plaintiff
                              Dr. Lance Tyler Albin, Dr. Alexis Victoria Albin,
                              and Joe Leos Arenas

                              Jonathan W. Johnson, LLC
                              2296 Henderson Mill Rd., Suite 406
                              Atlanta, Georgia 30345

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF   NEW YORK

------------------------------------------

Dr. Lance Tyler Albin; Dr. Alexis Victoria Albin; and Joe Leo
Arenas

Plaintiff(s),

-against-

The Boeing Company; Southwest Airlines Co.; GE Aviation
Systems, LLC; Safran USA, Inc.; and CFM International,
Inc.

Defendant(s).

------------------------------------------

Index No.   155786/2018

**Summons**

Date Index No. Purchased:

To the above named Defendant(s)

CFM International, Inc.
The Corporation Trust Company
Corporation Trust Center 1209 Orange Street, Wilmington, Delaware 19801

You are hereby summoned to answer the complaint in this action and to serve
a copy of your answer, or, if the complaint is not served with this summons, to serve
a notice of appearance, on the Plaintiff's attorney within 20 days after the service of
this summons, exclusive of the day of service (or within 30 days after the service is
complete if this summons is not personally delivered to you within the State of New
York); and in case of your failure to appear or answer, judgment will be taken against
you by default for the relief demanded in the complaint.

The basis of venue is   where the cause of action arose
which is   permitted pursuant to New York Consolidated Laws, Civil Practice Law and Rules CVP § 503(a).

Dated:   Atlanta, Georgia

June 4, 2019

Jonathan W. Johnson, LLC

by   /s/ Jonathan W. Johnson

Jonathan W. Johnson

Attorneys for Plaintiff

Dr. Lance Tyler Albin, Dr. Alexis Victoria Albin,
and Joe Leos Arenas

Jonathan W. Johnson, LLC
2296 Henderson Mill Rd., Suite 406
Atlanta, Georgia 30345

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF   NEW YORK

---

Dr. Lance Tyler Albin; Dr. Alexis Victoria Albin; and Joe Leo
Arenas

Plaintiff(s),

-*against*-

The Boeing Company; Southwest Airlines Co.; GE Aviation
Systems, LLC; Safran USA, Inc.; and CFM International,
Inc.

Defendant(s).

---

Index No.   155786/2018

𝔖ummons

Date Index No. Purchased:

To the above named Defendant(s)

The Boeing Company
Corporation Service Company
80 State Street, Albany, New York 12207

You are hereby summoned to answer the complaint in this action and to serve
a copy of your answer, or, if the complaint is not served with this summons, to serve
a notice of appearance, on the Plaintiff's attorney within 20 days after the service of
this summons, exclusive of the day of service (or within 30 days after the service is
complete if this summons is not personally delivered to you within the State of New
York); and in case of your failure to appear or answer, judgment will be taken against
you by default for the relief demanded in the complaint.

The basis of venue is   where the cause of action arose
which is   permitted pursuant to New York Consolidated Laws, Civil Practice Law and Rules CVP § 503(a).

Dated:   Atlanta, Georgia

June 4, 2019

Jonathan W. Johnson, LLC

by  /s/ Jonathan W. Johnson
Jonathan W. Johnson
Attorneys for Plaintiff
Dr. Lance Tyler Albin, Dr. Alexis Victoria Albin,
and Joe Leos Arenas

Jonathan W. Johnson, LLC
2296 Henderson Mill Rd., Suite 406
Atlanta, Georgia 30345

# EXHIBIT A-16

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------X

CINDY CANDY ARENAS;
JAKY ALYSSA ARENAS;
JINY ALEXA ARENAS;
JOE LEOS ARENAS;
ELHADJI CISSE;
DONALD KIRKLAND;
BEVERLY KIRKLAND;
CONNOR BROWN;
CASSANDRA ADAMS;
DR. LANCE TYLER ALBIN; and
DR. ALEXIS VICTORIA ALBIN

       Plaintiffs

  vs.

SOUTHWEST AIRLINES CO;               Index No: 155786/2018
THE BOEING COMPANY;
GE AVIATION SYSTEMS, LLC;
SAFRAN USA, INC;  and
CFM INTERNATIONAL, INC.

       Defendants
-----------------------------------------------------------------X

## FIRST AMENDED COMPLAINT

Plaintiffs Cindy Candy Arenas, Jaky Alyssa Arena, Jiny Alexa Arenas, Joe leos Arenas, Elhadji Cisse, Donald Kirkland, Beverly Kirkland, Connor Brown, Cassandra Adams, Dr. Lance Tyler Albin and Dr. Alexis Victoria Albin, by and through their attorneys, Jonathan W. Johnson, LLC and Jacqueline M. James, PLLC, for this First Amended Complaint against Defendants The Boeing Company, Southwest Airlines Co., GE Aviation Systems, LLC, Safran USA, Inc., and CFM International, Inc. jointly and severally, allege as follows:

1

## INTRODUCTION

1.      This action arises from a fatal in-flight engine explosion of a Boeing 737 aircraft.  On April 17, 2018, all Plaintiffs were fare-paying passengers aboard Southwest Airlines Flight 1380 from New York-LaGuardia Airport to Dallas, Texas (with the exception of Plaintiff Joe Arenas as explained below).  About twenty minutes after takeoff, at an altitude of approximately 32,500 feet, the left engine of the Boeing aircraft suddenly failed and self-destructed (exploded), propelling metal fragments at high velocity against the fuselage and shattering a passenger window, which resulted in explosive and violent decompression of the aircraft cabin.  A passenger was forcefully sucked into the open window, and was trapped partially outside the aircraft.  The other passengers, including Drs. Tyler and Alexis Albin who were seated nearby, were confronted with the overwhelming horror of being trapped in an airplane that they felt was about to crash.  Dr. Tyler Albin, who was on his honeymoon, attempted CPR on the fatal victim prior to the plane arriving at the gate.  As a consequence he was covered in her blood upon arrival.

2.      This legal action was initially brought by nine Plaintiffs, and all the original Plaintiffs except one, Joe Arenas, are voluntarily dismissing their claims with prejudice and filing a motion with the Court to be dismissed pursuant to CPLR § 1003.  Plaintiff Joe Arenas was not a passenger on Flight 1380, instead, his claim is for loss of consortium based upon the injuries suffered by his wife, Cindy Arenas, who was a passenger on Flight 1380, and she was one of the original Plaintiffs in this action whose claim is being voluntarily dismissed with prejudice (herein "wife of Joe Arenas").  Therefore, Joe Arenas will be the sole remaining original Plaintiff, and Drs. Tyler Albin and Alexis Albin are added as Plaintiffs in this Amended Complaint, which is filed pursuant to CPLR § 3025 inasmuch as the period of time for responding to the initial Complaint has been extended by agreement among the parties, and no responsive pleading has been filed to the initial

2

Complaint. Accordingly, this First Amended Complaint is an action by the three remaining plaintiffs—Dr. Tyler Albin, Dr. Alexis Albin and Joe Arenas.

## **PARTIES**

3. Plaintiff Dr. Lance Tyler Albin ("Dr. Tyler Albin") is a citizen and resident of the State of Louisiana, and was a passenger on Flight 1380, and is the husband of Dr. Alexis Albin.

4. Plaintiff Dr. Alexis Victoria Albin ("Dr. Alexis Albin") is a citizen and resident of the State of Louisiana, and was a passenger on Flight 1380, and is the wife of Dr. Tyler Albin.

5. Plaintiff Joe Leos Arenas ("Joe Arenas") is a citizen and resident of the State of Texas, and was not a passenger on Flight 1380; however, his wife Cindy Arenas was a passenger on Flight 1380, and his claim is for loss of consortium. His claim has not been withdrawn.

6. Defendant The Boeing Company ("Boeing") is, and was at all relevant times, a corporation incorporated under the laws of the State of Delaware; it operates as a manufacturer of aircraft for commercial air travel, with its principal executive offices at 100 N. Riverside Plaza, Chicago, Illinois; it is authorized to do business, and does business, in the State of New York; it is not a resident of the State of New York; it was served with the initial Complaint on October 11, 2018.

7. Defendant Southwest Airlines Co. ("Southwest Airlines") is, and was at all relevant times, a corporation incorporated under the laws of the State of Texas; it operates as a common carrier airline with its principal place of business at 2702 Love Field Drive, Dallas, Texas 75235; it is authorized to do business, and does business, in the State of New York; it is not a resident of the State of New York; it was served with the initial Complaint on October 11, 2018.

3

8.      Defendant GE Aviation Systems, LLC ("GE Aviation Systems") is, and was at all relevant times, a limited liability company organized under the laws of the State of Delaware; upon information and belief, it engages in, jointly with others, the design, development, manufacture and sale of aircraft engines, with its principal place of business at One Neuman Way, Cincinnati, Ohio 45215; it is authorized to do business, and does business, in the State of New York; it is not a resident of the State of New York; it was served with the initial Complaint on October 12, 2018.

9.      Defendant Safran USA, Inc. ("Safran USA") is, and was at all relevant times, a corporation incorporated under the laws of the State of Delaware; upon information and belief, it engages in, jointly with others, the design, development, manufacture and sale of aircraft engines, with its principal executive office at 2201 W. Royal Lane, Suite 150, Irving, Texas 75063; it is authorized to do business, and does business, in the State of New York; it is not a resident of the State of New York; it was served with the initial Complaint on October 11, 2018.

10.     Defendant CFM International, Inc. ("CFM International") is, and was at all relevant times, a corporation incorporated under the laws of the State of Delaware; upon information and belief, it engages in, jointly with others, the design, development, manufacture and sale of aircraft engines, with its principal place of business at One Neuman Way, Cincinnati, Ohio 45215; it is not a resident of the State of New York; it was served with the initial Complaint on October 11, 2018.

## JURISDICTION AND VENUE

11.     As set forth in the factual allegations that follow herein, the events leading to the engine failure that caused the passenger fatality and the injuries to other passengers, including Drs. Tyler and Alexis Albin, and the wife of Joe Arenas, occurred in New York prior to departure of Flight 1380.  That was the last opportunity for Defendant Southwest Airlines to inspect, detect and correct

4

the problem of a fractured fan blade that was about to cause the fatal engine failure of the Boeing

737 aircraft, or in the alternative to remove the Boeing 737 aircraft with the defective engine from

service. All passengers boarded the aircraft in New York. Once the Boeing aircraft took off, the

fatal incident was inexorable—indeed, it occurred just twenty minutes after liftoff from New York-

LaGuardia Airport. Jurisdiction for this lawsuit is properly in New York where the cause of action

arose, and it is proper in the Supreme Court of New York.

12.     Inasmuch as none of the parties reside in the State of New York, Plaintiff is permitted to

designate the county of venue pursuant to CPLR § 503(a).

## FACTUAL ALLEGATIONS

### Boeing's History

13.     Founded in 1916, Boeing builds commercial aircraft and has dominated commercial

aviation for decades. Boeing has grown to become a corporate icon of America.

14.     Started in Europe in 1970, the Airbus company began as a minor manufacturer of

commercial aircraft. But its significance grew. By 1999, when the airline JetBlue launched, it

was made up exclusively of Airbus A320's. In 2008, Airbus delivered 483 airplanes. Boeing

delivered only 375. Airlines pay upwards of 100 million dollars for each Boeing plane. Airbus

had risen from obscurity and began challenging Boeing in the race for market share in commercial

aviation which has caused Boeing to seek shortcuts in certifying aircraft which increase the danger

to passengers.

5

15.     Boeing has been locked in a corporate struggle with Airbus over billions of dollars in commercial aviation profits.  The high stakes corporate war had real world consequences; lower sales for Boeing due to Airbus competition meant lower profits.  Lower profits meant smaller executive compensation packages for Boeing executives responsible for making operational and safety decisions.

16.     Boeing had tools at its disposal that provided it with advantages against Airbus.  Boeing knew how to work the certification process.   Boeing was close with the Federal Aviation Administration, (hereinafter, "FAA"), particularly with the office in Seattle.   Boeing stressed a corporate culture of speed to increase profits.   Boeing ignored or silenced the voices of whistleblowers who raised safety concerns resulting from these practices.

17.     Over time, the tools that aided Boeing in the war with Airbus led to enormous profits as evidenced by Boeing's stock price.  In the past 10 years alone, Boeing's stock more than quadrupled in price from 100 to nearly 450 dollars per share.  With executives paid in huge chunks of stock, Boeing executives profited handsomely from the massive increase in share price.

18.     In 2018, the top 5 executives at Boeing each earned over 7 million dollars in base pay, bonuses, stocks and options.  Boeing's CEO Dennis Muilenburg made over $23 million, a 27% increase in his salary over the previous year. $13.1 million of Muilenburg's salary was attributable to two bonus plans.  One bonus plan was tied to targets for free cash flow, per-share earnings and revenue that were all exceeded.  The other bonus plan was tied to a three-year economic profit goal which the company met. Thus, the only compensation incentives for Boeing executives were to hit sales and profitability targets which motivated them to focus more on those goals than safety.

**Type Certification and the Boeing 737**

6

19.     The Boeing 737 aircraft record of tragic crashes manifests Boeing's systemic failure to provide adequate safety for people who fly aboard the Boeing 737 aircraft.  This has caused 459 fatalities on Boeing 737 aircraft within the last 2 years.  It has also caused enormous financial losses for air carriers who relied upon Boeing aircraft.

20.     In 2011, American Airlines, a long-time loyal customer of Boeing, informed Boeing that it intended to place a large order for the newer fuel-efficient Airbus A320's.

21.     A few months later, in response to the Airbus pressure, Boeing conceived of a new fuel-efficient plane.  As it had done in the past, Boeing opted to make renovations on the existing 737 rather than build a new plane.  Like many of the predecessors including the 737-700, the 737-8 Max could be added to the 737 type certificate.  Instead of taking a decade to build and certify, it would take only 5-6 years.  Pilots could learn to use the new plane in a fraction of the time that it takes to train a pilot in the use of a new plane.  It also costs a lot less money than developing a new model plane.

22.     The first Boeing 737 received its type certification in 1967.  It is certified under type certificate No. A16WE.

23.     Southwest Flight 1380 was a Boeing 737-700 aircraft.  The 737-700 is certified under Type Certificate No. A16WE; the same type certificate as the 737 in 1967.

24.     Type Certificate No. A16WE covers the following "classic" models:  737-100, 737-200, 737-200C, 737-300, 737-400, 737-500.

25.     Type Certificate No. A16WE covers the following "Next Generation" models: 737-600, 737-700, 737-800, 737-800BCF, 737-900, 737-900ER.

7

26.     Type Certificate No. A16WE also covers the 737-8 Max and the 737-9 Max as amended.

27.     In the race for commercial air supremacy, the use of type certification as a systematic shortcut to bring new products to market faster and cheaper gave Boeing a competitive advantage. Boeing also had close ties with the FAA

### Self-Certification of Aircraft by Boeing

28.     Upon information and belief, over the course of time that Boeing has manufactured and sold Boeing 737 aircraft, the FAA, at the urging of Boeing, has delegated more and more authority to Boeing with respect to aircraft safety and certification. Boeing has enjoyed a collegial relationship with the FAA.  In the global corporate race, Boeing's relationship with the FAA provided access to an inside track for certification of commercial aircraft.

29.     For decades, the FAA allowed Boeing engineers to oversee tests on Boeing aircraft and then vouch for the safety of Boeing aircraft.  A self-certification system is at odds with the role of a federal agency as the public's watchdog.  Indeed, other agencies have reported disturbing data concerning self-certification.

30.     In 1993, the Government Accountability Office (GAO) reported that Boeing had self-certified 95% of the Boeing 747-400.  In the 1990's, the Transportation Department, which oversees the FAA, conducted an audit in the 1990's and discovered that Boeing had inspected and certified 95% of the Boeing 777's itself.

31.     Self-certification provides Boeing an advantage in time-to-market, but the cost is close scrutiny of safety.  For example, some Boeing designs were sloppy, such as internal wiring instructions that do not specify which tools to use to install different wires.  It is customary to include such instructions.

8

32.      In 1991 and 1994, two 737's crashed in what became known as the "rudder hard-over" crashes.  The 737's had been certified with one power control unit and a single rudder panel.  Other commercial aircraft had at least two power control systems in case one failed.  Boeing had no such redundancy, so the two flights were doomed after a failure occurred.  Boeing admitted at a meeting with the FAA in 1992 that part of the 737 did not meet the "fail safe design intent".  Following the 1994 crash, Boeing recommended pilots get more training rather than implement the design changes recommended by the National Transportation Safety Board.

33.      Over the years, the relationship between Boeing and the FAA has grown even closer.  Until 2009, Boeing nominated the employees who vouched for safety.  In 2009, the rules changed, and Boeing selected those employees.

34.      In 2011, the same year the Boeing 787 Dreamliner was certified, the Transportation Department inspector general said in a report that the FAA "has not ensured engineers are adequately trained to perform their expanded enforcement responsibilities".

35.      After two incidents in January of 2013, the National Transportation Safety Board faulted the FAA for inadequate testing and failing to catch a design deficiency in the 787 Dreamliner Lithium-ion batteries.  The NTSB also noted that there was insufficient guidance for FAA engineers to use during the type certification process to ensure compliance with applicable requirements.

36.      A more recent example pertains to the Boeing 737 MAX aircraft and delegation by the FAA to Boeing of safety and certification authority regarding the "System Safety Analysis" on the Maneuvering Characteristics Augmentation System ("MCAS") which has since been identified as

9

FILED: NEW YORK COUNTY CLERK 06/04/2019 01:42 PM
NYSCEF DOC. NO. Case 1:19-cv-05761-PKC    Document 1-1    Filed 06/19/19    Page 114 of 150

INDEX NO. 155786/2018
RECEIVED NYSCEF: 06/07/2019

a contributing cause of recent crashes of the Boeing 737-8 MAX aircraft which have caused hundreds of fatalities and disrupted commercial aviation world wide.

## The Corporate Culture of Boeing is Greed

37.     Boeing professes to put safety first, but the corporate culture says otherwise.  The 787 Dreamliner is manufactured at the Boeing facility in Charleston, South Carolina.  Complaints have arisen from defective manufacturing, debris left on planes and the pressure Boeing applied on its employees to not report violations.  Consequently, the Dreamliner has suffered from poor production and lack of oversight.

38.      Faulty parts have been installed in planes and tools have been left aboard planes.

39.     Metal shavings and slivers have been habitually left inside jets, often near electrical systems risking electrical shorts and fires.  The sharp metal shaving can potentially cut wires. On several planes, dangerous clusters of sharp metal slivers hanging over the wiring that commands the flight controls have been discovered.

40.     As complaints from employees have fallen on deaf ears, the risks of accidents caused by debris have increased.  The shavings may have been the cause for the damage to an in-service airplane on one occasion in 2012.

41.     The FAA issued a directive requiring 787 Dreamliners to be cleared of metal shavings before they are delivered.

42.     Compliance with such a directive is easily achievable so long as workers clean the bowels of the aircraft with a vacuum.

43.    Boeing has faced lawsuits from employees who claimed they were retaliated against for flagging manufacturing mistakes.

44.    As a direct result of Boeing's culture of pushing their employees, ignoring their complaints, and putting profits over the safety of the public, the safety of the passengers aboard the Dreamliner has suffered from inferior production and lack of oversight.

45.    The culture of concern for profits at the expense of safety at Boeing is not limited to the 787 Dreamliner.

46.    After finding a wrench, bolts and trash inside new planes, the Air Force halted deliveries of the KC-46 tanker, built at the Boeing facility in Everett, Washington.  The debris is a safety issue.

47.    Complaints originating from pilots are handled in another way.  Over the course of time that Boeing has manufactured and sold Boeing 737 aircraft, pilots who fly Boeing 737 aircraft for various airlines have expressed concerns about the safety and airworthiness of Boeing 737 aircraft. Although Boeing had actual, or constructive knowledge of such concerns expressed by pilots, Boeing failed and refused to take action to address such concerns of the pilots.

48.    A recent example, upon information and belief, pertains to the Boeing 737 MAX aircraft and a pilot that expressed frustration that some systems, including the MCAS, are "inadequate and almost criminally insufficient" and that the lack of adequate information and training for pilots was "unconscionable."

49.    As a result of the desire for increasing profits, quality control has suffered, resulting in increasingly dangerous, and more frequent, airline incidents.  Boeing promotes this culture of

11

speed; using non-union labor, systematically ignoring complaints of workers and firing potential whistleblowers.

50.    Boeing has profited from its conduct.  On January 30, 2019, Boeing reported profits of over  $100 billion for the first time in its history.  Boeing delivered a record 806 commercial aircraft in 2018.  Cutting costs and bringing products to market quickly pays lucrative financial dividends and hefty compensation packages for Boeing executives, but the price has been paid in human lives.

### A Growing Record of Incidents

51.    Minimizing certification barriers and promoting a culture of speed over safety, leads to errors.   And as the mounting record of incidents indicates, there have been more and more problems.  "Boeing has no higher priority than the safety of the flying public" according to Gordon Johndroe, a spokesman for Boeing.

52.    On March 3, 1991, a Boeing 737 operating as United Airlines flight 585 was on its turn to complete its final approach to land at Colorado Springs Municipal Airport when the nose pitched down until it reached nearly vertical attitude just before impact.  The National Transportation Safety Board (NTSB) determined the probable cause to be the loss of control of the airplane resulting from the rudder surface being deflected in a direction opposite to that commanded by the pilots as the result of a jam of the main rudder power control unit.  There were no survivors.

53.    On September 8, 1994, a Boeing 737-300 crashed while maneuvering to land in Pittsburgh, PA. The NTSB determined the probable cause of the crash to be the same as United Airlines flight 585, loss of control as the result of a jam of the main rudder power control unit.  All 132 people on board were killed and the airplane was destroyed by impact forces and fire.  The NTSB

12

recommended that Boeing change the design of the aircraft. Ignoring the recommendation, Boeing recommended pilots get more training.

54.     On July 17, 1996, a Boeing 747-131 operating as flight TWA 800, killed all 230 people on board when it plunged into the Atlantic Ocean after takeoff from New York. The NTSB determined that the most likely cause was a short circuit outside of the center wing fuel tank (CWT). The NTSB further determined that a contributing factor to the accident was the design and certification concept of the CWT with heat sources located beneath it.

55.     On June 28, 2008, a Boeing 767-200 operating as cargo airplane flight 1611 from San Francisco International Airport caught fire before engine start up. The NTSB determined the probable cause to be the design of the supplemental oxygen system hoses and the lack of positive separation between electrical wiring and electrically conductive oxygen system components. The NTSB further noted that contributing to this accident was the failure to install nonconductive oxygen hoses. The lack of positive separation allowed a short circuit to breach a combustible oxygen hose, release oxygen, and initiate a fire in the supernumerary compartment that rapidly spread to other areas.

56.     On December 29, 2010 a Boeing 757-200 flying as American Airlines flight 2253, ran off the departure end of runway 19 at Jackson Hole Airport in Wyoming. The National Transportation Safety Board determined the probable cause of the incident to be in part  a manufacturing defect in a clutch mechanism that prevented the speedbrakes from automatically deploying after touchdown.

57.     On April 1, 2011 a Boeing 737-3H4 flying as Southwest flight 812, conducted an emergency descent after suffering a rapid decompression. An unidentified sound was recorded on

the cockpit area microphone.  The captain called for oxygen masks as the cabin lost pressurization.  A 2-foot hole in the fuselage was observed.  The NTSB determined the probable cause to be the improper installation of the fuselage skin panel at the S-4L lap joint during the manufacturing process, which resulted in multiple site damage fatigue cracking and eventual failure of the lower skin panel.

58.    On January 7, 2013, a Boeing 787 Dreamliner operated by Japan Airlines caught fire while it was parked at the gate at Logan International Airport in Boston.  The cause was a failure of the Auxillary Power unit (APU) a lithium-ion battery as referenced above.  Boeing was required to demonstrate that the 787's design complied with the FAA's special conditions.  Boeing performed its own safety assessment.  Boeing determined that the rate of occurrence of cell venting for the 787 battery would be about 1 in 10,000,000 flight hours.  The 787 Dreamliner had been in service for only 52,000 hours.

59.    On January 16, 2013, Boeing's gross miscalculation of the rate of the occurrence of cell venting came to the fore again when a second lithium-ion battery caught fire.  In that instance, a Boeing 787 Dreamliner operated by All Nippon Airways caught fire.  The FAA grounded the 787 fleet after the second incident.

60.    On September 8, 2015, 170 passengers and crew aboard British Airways Flight 2276, a Boeing 777-236 were forced to evacuate the aircraft in Las Vegas when an uncontained engine explosion occurred.  Cracks in the high-pressure compressor spool of the engine manufactured by General Electric caused the explosion.  Over four years earlier the FAA had warned both Boeing and General Electric about a design flaw in the engine that could result in cracks in the high-pressure compressor spool that could cause the very explosion that occurred and rain debris big enough to set the rest of the plane on fire.  Both Boeing and GE knew of the compressor spool

14

issue but took no affirmative steps in 4 years to correct it. If not for the quick-acting pilots who slammed on the brakes as the plane was headed down the runway; the plane, and all those on board, surely would have met with disaster. The NTSB noted in its investigation that a contributing factor to the incident was the lack of inspection procedures.

61.     On August 27, 2016, in a precursor of Southwest flight 1380, a Boeing 737-7H4 operating as Southwest Airlines Flight 3472 made an emergency landing 12 minutes after takeoff. The number one CFM International CFM56-7 engine suffered an uncontained engine failure. Debris from the engine punctured the left side of the fuselage causing a loss of cabin pressure and damaged the wing and empennage. A 5-inch by 16-inch hole was found in the fuselage. This incident could have caused loss of the entire aircraft and all passengers.

62.     Upon information and belief, Boeing, and all the other Defendants, were aware of the engine explosion on Flight 3472; were aware of safety concerns with the CFM56-7B engines; were aware of the dangerous propensity for such catastrophic engine failure, and the serious, potentially fatal, consequences resulting therefrom; and were aware of the imperative need for adequate monitoring, inspection, testing, service, maintenance and repair.

63.     On October 28, 2016, a fire occurred in the right engine of a Boeing 767-323 operating as American Airlines flight 383. NTSB believed the cause to be a manufacturing anomaly not likely to be detected during inspections.

64.     On October 14, 2017, while travelling from Abu Dhabi to Sydney, the flight crew of a Boeing 777-300 observed a burning smell emanating from an air vent. The plane was diverted to Adelaide. Inspection found that a wiring bundle had been incorrectly routed, allowing it to chafe through the insulation, come into contact with screws and nut plates, and thus short-circuit the

15

wires.  Boeing determined that the electrical routing error had occurred during the manufacture of the aircraft.  There had been 4 earlier reports involving wire chafing.

65.    On April 17, 2018, a Boeing 737-700, Southwest Airlines Flight 1380 left LaGuardia Airport.  Along with the other passengers on board the plane was the wife of Joe Arenas, and two newlyweds, Dr. Tyler Albin and his wife Dr. Alexis Albin, who were on their honeymoon.

**Southwest Flight 1380**

66.    Southwest Airlines Flight 1380 lifted off from New York-LaGuardia Airport bound for Dallas, Texas, with the ultimate intended destination of San Francisco ("Flight 1380").

67.    Upon information and belief, the Flight 1380 aircraft was a Boeing 737-700 with the registration N772SW (the "Aircraft"), manufactured by Defendant Boeing and sold to Defendant Southwest Airlines.

68.    Within twenty minutes after liftoff, the passengers heard a loud bang as if something on the Aircraft had exploded, or as if the Aircraft had collided with something in midair.

69.    Upon information and belief, the left engine of the Aircraft sustained a catastrophic fan blade failure and self-destructed, and the explosion projected metal fragments at high velocity against the fuselage and shattered a passenger window of the Aircraft.

70.    Instantly, the window collapsed resulting in explosive and violent decompression of the Aircraft cabin.

71.    The passenger nearest the window was sucked into the opening created by the shattered window and was trapped there in great agony.

72.     The passengers experienced the Aircraft begin to fall and roll as the oxygen masks came down.

73.     Debris was flying throughout the cabin, there was the smell of something burning, and passengers experienced extreme pain in their ears.

74.     During the excruciating moments following the explosion, Drs. Tyler and Alexis Albin, and the wife of Joe Arenas, endured the horrific fear of a plane crash—suddenly and unexpectedly they were facing death.

75.     Eventually, after great turmoil and anxiety for all onboard, the pilot, utilizing the only remaining engine, was able to bring the Aircraft under control and make an emergency landing at Philadelphia International Airport.

76.     After the Aircraft landed, the critically injured passenger trapped in the window was extricated and Dr. Tyler Albin attempted CPR to save her life while waiting for medics to arrive; however, all efforts to save her life proved futile and hopeless. Dr. Albin ended up covered in her blood as a result of his efforts to perform CPR on her.

77.     The engine of the Boeing 737 and its protective cowling had not been designed with sufficient material, and sufficient structural integrity, to contain any shrapnel from a failed engine component and prevent it from penetrating the passenger cabin.  This failure caused the death of the passenger who was sucked out the window, and the traumatic circumstances caused egregious damage to other passengers, including Drs. Tyler and Alexis Albin who were in the immediate proximity of the passenger who was killed, and to the wife of Joe Arenas.

78.     As a direct result of the frightful, death-threatening failure of the engine on the Boeing Aircraft, Drs. Tyler and Alexis Albin, as well as the wife of Joe Arenas suffered severe mental,

17

emotional and psychological injuries, including post-traumatic stress disorder, and physical injuries.

79.     As a direct result of injuries suffered by his wife, Joe Arenas suffered loss of consortium due to the devastating impact upon their marital relationship, including disruption of a healthy and happy family life and resulting loss of support, services, companionship, affection, society, intimate relations and solace.  Similarly, due to the injuries suffered by Drs. Tyler and Alexis Albin, they have suffered a loss of consortium for each other.

80.     The tragedy of flight 1380 is just one terrible chapter in the story of Boeing placing profits above safety.  Dr. Tyler Albin and his wife Dr. Alexis Albin, as well as the wife of Joe Arenas, are just three of the hundreds of victims injured by this misconduct.  There are hundreds more victims and even more recent, deadlier chapters.

### Incidents Involving  Boeing 737 Aircraft Continue

81.     On May 18, 2018, just over a month after the gruesome tragedy of flight 1380, Global Air Flight 972, a Boeing 737 aircraft, crashed shortly after takeoff from Cuba and took the lives of another 112 people.

82.     In October of 2018, Lion Air flight 610 jerked wildly in the air as pilots desperately fought the Boeing navigation system for control of the aircraft.  Lion Air flight 610 was a 737-8 MAX. The investigation currently points to a faulty Angle of Attack (AOA) sensor which was part of the Boeing MCAS system as the cause.  There are two AOA sensors on each aircraft so that if one sensor fails, it will disagree with the other sensor and a "disagree" alert will be sent to the pilot. Though the redundant second sensor and "disagree" alert systems were installed on the planes,

18

Boeing did not activate them. They were merely an option that Airlines had to pay extra for. Airlines believed that they were standard equipment. Since 2004, AOA sensors had been reported and flagged to the FAA over 200 times on the FAA Service Difficulty reporting site. They were flagged for requiring adjustment, repairing or failing. Investigators of the Lion Air 610 crash believe the Angle of Attack sensor incorrectly sensed the plane had rolled up, causing the MCAS system to pitch the nose of the plane down. The pilots fought to override the MCAS system over 20 times but lost the battle. The 737 did a nose-dive into the sea, plunging all the passengers and crew aboard to their deaths.

83.     In March of 2019, pilots flying another Boeing 737-8 Max operating as Ethiopian Flight 302 again battled the MCAS. A faulty AOA sensor is again blamed. Again, everyone aboard plummeted to their deaths. Regulatory agencies around the world grounded the 737-8 Max planes. Well after authorities from around the world grounded the 737-8 Max, the FAA finally followed suit and grounded the plane. Boeing then announced it would make the "disagree" alert system operational and standard on all the planes.

84.     Boeing's bestselling product, the 737-8 Max remains grounded worldwide. Public confidence in the aircraft maker is shaken. As pressure builds and the bottom line is jeopardized, Boeing now moves to address the numerous issues with its planes. One issue concerns the slat track assembly. Boeing announced that the 737 MAX and the older model NG may also have faulty parts on the wings that could crack and damage the aircraft while in use. The FAA announced that more than 300 of the MAX airplanes and an older model 737 may contain such improperly manufactured parts.

85.     In an interview with CBS, Boeing's CEO Dennis Muilenburg claimed that safety is the highest priority of the corporation and apologized to consumers admitting that Boeing had made

19

mistakes.  One of those mistakes being that Boeing was aware that the "disagree" light which caused the accident was not active on all flights in 2017 but neglected to inform the FAA for 13 months.

86.    Another mistake was changing the role of the MCAS system without disclosing the changes for the FAA who determined the pilot training needs.  The original MCAS was supposed to only activate in rare high-speed moves, and it relied on multiple sensors before it activated to nudge the plane down.  This version of the MCAS, the quiet back up system in the background, was approved by the FAA.  After testing the new MAX pilots discovered that the larger engines of the plane made handling more difficult.  In response to the critique, Boeing expanded the role and parameters of the MCAS, giving the system more power to nudge the plane down harder and allowing it to activate not just in high speed situations to avoid stalls.  In a rush to get the plane done, the new MCAS system relied on a single AOA sensor, believing the AOA sensor could only be damaged in the rarest of occasions, such as a bird strike.  Since 1990, there have been 1,172 instances of bird strikes on planes, with 122 strikes on AOA sensors.  As Boeing rushed to get the plane completed, Boeing never disclosed the changes to the FAA officials who determined pilot training needs.  Under pressure to finish the project, Boeing asked to remove the description of the MCAS system from the pilot's manual.  This would have required more training.  The FAA agreed to the Boeing request, believing the MCAS to be the original version.  Thus, after the Lion Air crash most MAX pilots were unaware of the existence of the MCAS software on the plane.  To leave the MCAS system in the pilot's manual would have made the plane less marketable as more time would have been required for pilot training.  The MCAS software would now more aggressively take charge of a plane, relying on a single AOA sensor that could be compromised.

20

87.     Boeing had knowledge of its systemic failure to provide adequate safety for Boeing 737 aircraft, free of negligence, defective and unreasonably dangerous design and manufacture, and free of failure to provide adequate warnings and safety instructions; and was aware of the enormous cost of such failure in human lives lost and the suffering endured by survivors such as that inflicted upon the Plaintiffs in this case.

88.     As the timeline above illustrates, the number and frequency of aircraft incidents continues to increase.  The culture, practices, and customs at Boeing keep the company profitable but at the cost of increased risk to the passenger.  Boeing must be held accountable to alleviate the jeopardy the company has created for the traveling public.  The timeline further demonstrates that Boeing only responds to problems once profitability is threatened.

89.  Boeing has been sued in a class action by its shareholders in which they allege that Boeing has covered up problems with the 737 and that the plane maker "effectively put profitability and growth ahead of airplane safety and honesty."  The shareholders are suing Boeing for securities fraud.  In that suit, shareholders claim that Boeing made false and misleading statements about the company's operations, its growth and its safety record which inflated its market value.

90.  Despite the systematic failures to manage aircraft safety, no Boeing executive has been terminated or disciplined by the company for failures in these critical duties.

**The Defendants**

91.     At all relevant times, Defendant Boeing was an aircraft manufacturer engaged in the business of manufacturing and selling commercial aircraft to be used for transporting paying passengers by air.

21

92      At all relevant times, Defendant Southwest Airlines was a common carrier engaged in the business of transporting paying passengers by air.

93.     Upon information and belief, at all relevant times Defendants GE Aviation Systems, LLC, Safran USA, Inc. and CFM International, Inc. (collectively "Defendant Engine Manufacturers") were jointly engaged in the design, development, manufacture and sale of aircraft engines to be installed on aircraft used for transporting paying passengers by air.

94.     Upon information and belief, the Boeing Aircraft was powered by CFM56-7B engines which were manufactured by Defendant Engine Manufacturers; the engines, including the engine that failed (the "Engine") was sold to Boeing; and Boeing installed the Engine on the Boeing Aircraft that it sold to Defendant Southwest Airlines.

## FIRST CAUSE OF ACTION
## NEGLIGENCE AGAINST DEFENDANT BOEING

95.     Plaintiffs incorporate by reference the factual allegations in the preceding paragraphs as if fully set forth herein.

96.     Boeing, in its business of designing, developing, manufacturing and selling aircraft, including the component engines, had a duty to assure that its aircraft were reasonably safe for the passengers flying therein, whose safety and lives are at risk, including the duty to provide warnings

and safety instructions for monitoring, inspecting, testing, servicing, maintaining and repairing the aircraft, including component engines.

97.     Boeing negligently failed to assure that the Boeing Aircraft and the component Engine sold to Southwest Airlines was reasonably safe; and Boeing failed to provide adequate warnings and safety instructions for monitoring, inspecting, testing, servicing, maintaining and repairing the Boeing Aircraft and the Engine for passenger safety, and to properly monitor and inspect the work of its subcontractors.

98.     Boeing's negligence was the direct and proximate cause of the engine failure and the resulting injuries and damages suffered by Drs. Tyler and Alexis Albin, and the wife of Joe Arenas.

99.     As a direct and proximate result of the negligence of Boeing, Drs. Tyler and Alexis Albin suffered, and will continue to suffer, severe emotional and psychological injuries, including post-traumatic stress disorder, and physical injuries and resulting expenses and damages, as well as a loss of consortium, the amount of which is undetermined at this time.

100.    Joe Arenas was not a passenger on Flight 1380, but he suffered the loss of consortium of his wife, due to the devastating impact upon their marital relationship, including disruption of a healthy and happy family life and resulting loss of support, services, companionship, affection, society, intimate relations and solace.

101     By reason of the foregoing, Boeing is liable to Drs. Tyler and Alexis Albin for compensatory damages, including loss of consortium, and to Joe Arenas for loss of consortium, in sums to be determined at trial.

## SECOND CAUSE OF ACTION
## STRICT PRODUCT LIABILITY AGAINST DEFENDANT BOEING

23

102.    Plaintiffs incorporate by reference the factual allegations in the preceding paragraphs as if fully set forth herein.

103.    Defendant Boeing, in its business of designing, developing, manufacturing and selling aircraft, including the component engines, had a duty to assure that its aircraft were not defective and unreasonably dangerous for the passengers flying therein, whose safety and lives are at risk.

104.    Defendant Boeing had the duty to provide adequate warnings and safety instructions for its customer, Defendant Southwest Airlines, to monitor, inspect, test, service, maintain and repair the Aircraft and the component Engine.

105.    The Boeing Aircraft and the component Engine sold by Defendant Boeing to Defendant Southwest Airlines was defective and unreasonably dangerous in design and manufacture, and was defective and unreasonably dangerous with regard to the inadequacy of warnings and safety instructions for monitoring, inspecting, testing, servicing, maintaining and repairing the Aircraft and the Engine for passenger safety.

106.    Defendant Boeing's systemic failure to provide Boeing 737 aircraft free of defective and unreasonably dangerous design and manufacture, and failure to provide adequate warnings and safety instructions, is manifested by horribly tragic crashes, the most recent being Ethiopian Airlines Flight 302 that crashed in Ethiopia on March 10, 2019 and took the lives of 157 people; the Lion Air Flight 610 that crashed in the sea off the coast of Indonesia on October 29, 2018 and killed 189 people; and Global Air Flight 972 that crashed in Mexico on May 18, 2018 with 112 fatalities.

107.    The engine explosion on Flight 1380 that is the subject of this case was forewarned by a similar engine explosion on a Boeing 737 aircraft, about a year and a half earlier, involving Southwest Airlines Flight 3472 on August 27, 2016 in Florida, which caused severe damage to the plane.

108.    Defendant Boeing had knowledge of its systemic failure to provide Boeing 737 aircraft free of defective and unreasonably dangerous design and manufacture, and failure to provide adequate warnings and safety instructions, for Boeing 737 aircraft, and was aware of the cost of such failure in human lives loss and the suffering endured by survivors such as that inflicted upon the Plaintiffs in this case.

109.    The defective and unreasonably dangerous Aircraft, including the Engine and the inadequate warnings and safety instructions, from Defendant Boeing was the direct and proximate cause of the engine failure and the resulting injuries suffered by Drs. Tyler and Alexis Albin, and the wife of Joe Arenas.

110.    As a direct and proximate result of the foregoing, Drs. Tyler and Alexis Albin suffered, and will continue to suffer, severe emotional and psychological injuries, including post-traumatic stress disorder, and physical injuries and resulting expenses and damages, as well as loss of consortium, the amount of which is undetermined at this time.

111.    Plaintiff Joe Arenas was not a passenger on Flight 1380, but he suffered the loss of consortium of his wife, due to the devastating impact upon their marital relationship, including disruption of a healthy and happy family life and resulting loss of support, services, companionship, affection, society, intimate relations and solace.

112.    By reason of the foregoing, Defendant Boeing is liable to Drs. Tyler and Alexis Albin for compensatory damages, including loss of consortium, and to Joe Arenas for loss of consortium, in sums to be determined at trial.

### THIRD CAUSE OF ACTION
### NEGLIGENCE AGAINST DEFENDANT SOUTHWEST AIRLINES

113.    Plaintiffs incorporate by reference the preceding factual allegations as if fully set forth herein.

114.    As a common carrier airline transporting passengers for a fee, Defendant Southwest Airlines had a duty to provide the highest degree of care for its passengers, whose very lives were at risk.

115.    Defendant Southwest Airlines had a duty to reasonably monitor, inspect, test, service, maintain and repair the Aircraft and the Engine to keep its aircraft reasonably safe for its passengers, or to remove from service aircraft that were not reasonably safe.

116.    Defendant Southwest Airlines negligently failed in its duty to provide the highest degree of care for its passengers whose lives were at risk; and further failed in its duty to provide even a reasonable degree of care for its passengers.

117.    Defendant Southwest Airlines' negligently failed to reasonably monitor, inspect, test, service, maintain and repair the Aircraft and the Engine to keep its aircraft reasonably safe for its passengers, and to remove from service aircraft that were not reasonably safe.

118.    Defendant Southwest Airlines' negligence was the direct and proximate cause of the engine failure and the resulting injuries and damages suffered by Drs. Tyler and Alexis Albin, and the wife of Joe Arenas, and the resulting loss of consortium suffered by Plaintiff Joe Arenas.

119.    As a direct and proximate result of the negligence of Defendant Southwest Airlines, Drs. Tyler and Alexis Albin suffered, and will continue to suffer, severe mental, emotional and psychological injuries, including post-traumatic stress disorder, and physical injuries and resulting expenses, losses and damages, as well loss of consortium, the amount of which is undetermined at this time.

120.    Plaintiff Joe Arenas was not a passenger on Flight 1380, but he suffered the loss of consortium of his wife due to the devastating impact upon their marital relationship, including disruption of a healthy and happy family life and resulting loss of support, services, companionship, affection, society, intimate relations and solace.

121.    By reason of the foregoing, Defendant Southwest Airlines is liable to Drs. Tyler and Alexis Albin for compensatory damages, including loss of consortium, and to Plaintiff Joe Arenas for loss of consortium, in sums to be determined at trial.

## FOURTH CAUSE OF ACTION
## BREACH OF CONTRACT (INCLUDING EXPRESS AND IMPLIED WARRANTIES) AGAINST DEFENDANT SOUTHWEST AIRLINES

122.    Plaintiffs incorporate by reference the factual allegations in the preceding paragraphs as if fully set forth herein.

123.    As a common carrier airline transporting passengers for a fee, Defendant Southwest Airlines contracted with its passengers, including Drs. Tyler and Alexis Albin, and the wife of Joe Arenas, to provide air transportation with aircraft that are reasonably safe for its passengers.

124.    Pursuant to its contractual obligations, including express and implied warranties, Defendant Southwest Airlines had a duty to reasonably monitor, inspect, test, service, maintain and repair the Aircraft and the Engine to keep its aircraft reasonably safe for its passengers, and to remove from service aircraft that were not reasonably safe.

125.    Defendant Southwest Airlines' failed to perform pursuant to its contractual obligations, including express and implied warranties, to reasonably monitor, inspect, test, service, maintain and repair the Aircraft and the Engine to keep its aircraft reasonably safe for its passengers, and to remove from service aircraft that were not reasonably safe.

126.    As a result of Defendant Southwest Airlines' breach of contract, including express and implied warranties, Drs. Tyler and Alexis Albin suffered, and will continue to suffer, severe mental, emotional and psychological injuries, including post-traumatic stress disorder, and physical injuries and resulting expenses, losses and damages, as well as loss of consortium, the amount of which is undetermined at this time.

127.    Plaintiff Joe Arenas was not a passenger on Flight 1380, but he suffered the loss of consortium of his wife, due to the devastating impact upon their marital relationship, including disruption of a healthy and happy family life and resulting loss of support, services, companionship, affection, society, intimate relations and solace.

128.     By reason of the foregoing, Defendant Southwest Airlines is liable to Drs. Tyler and Alexis Albin for compensatory damages, including loss of consortium, and to Joe Arenas for loss of consortium, in sums to be determined at trial.

## FIFTH CAUSE OF ACTION

## NEGLIGENCE AGAINST DEFENDANTS GE AVIATION SYSTEMS, SAFRAN USA, AND CFM INTERNATIONAL

129.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

130.     Defendants GE Aviation Systems, Safran USA and CFM International (collectively "Defendant Engine Manufacturers"), in their business of designing, developing, manufacturing and selling engines for aircraft, had a duty to assure that their engines were reasonably safe for the passengers flying in aircraft powered by their engines, and whose safety and lives are at risk; including the duty to provide warnings and safety instructions for monitoring, inspecting, testing, servicing, maintaining and repairing the engines.

131.     Defendant Engine Manufacturers negligently failed to assure that the Engine sold to Defendant Boeing and installed on the Aircraft Boeing sold to Southwest Airlines was reasonably safe; and it negligently failed to provide adequate warnings and safety instructions for monitoring, inspecting, testing, servicing, maintaining and repairing the Engine for passenger safety.

132.     Defendant Engine Manufacturers' negligence was the direct and proximate cause of the engine failure and the resulting injuries and damages suffered by Drs. Tyler and Alexis Albin, and the wife of Joe Arenas.

133.     As a direct and proximate result of the negligence of Defendant Engine Manufacturers, Drs. Tyler and Alexis Albin suffered, and will continue to suffer, severe mental, emotional and

29

psychological injuries, including post-traumatic stress disorder, and physical injuries and resulting expenses and damages, as well as loss of consortium, the amount of which is undetermined at this time.

134.    Plaintiff Joe Arenas was not a passenger on Flight 1380, but he suffered the loss of consortium of his wife due to the devastating impact upon their marital relationship, including disruption of a healthy and happy family life and resulting loss of support, services, companionship, affection, society, intimate relations and solace.

135.    By reason of the foregoing, Defendant Engine Manufacturers are liable to Drs. Tyler and Alexis Albin for compensatory damages, including loss of consortium, and to Joe Arenas for loss of consortium, in sums to be determined at trial

## SIXTH CAUSE OF ACTION
## STRICT PRODUCT LIABILITY AGAINST DEFENDANTS GE AVIATION SYSTEMS, SAFRAN USA, AND CFM INTERNATIONAL

136.    Plaintiffs incorporate by reference the factual allegations in the preceding paragraphs as if fully set forth herein.

137.    Defendant Engine Manufacturers, in their business of designing, developing, manufacturing and selling engines for aircraft, had a duty to assure that its engines were not defective and unreasonably dangerous for the passengers flying in aircraft powered by their engines, whose safety and lives are at risk.

138.    Defendant Engine Manufacturers had the duty to provide adequate warnings and safety instructions for its ultimate customer, Defendant Southwest Airlines, to monitor, inspect, test, service, maintain and repair the Engine.

30

139.    The Engine sold by Defendant Engine Manufacturers to Defendant Boeing and installed on the aircraft sold by Defendant Boeing to Defendant Southwest Airlines was defective and unreasonably dangerous in design and manufacture, and was defective and unreasonably dangerous with regard to the inadequacy of warnings and safety instructions for monitoring, inspecting, testing, servicing, maintaining and repairing the Engine for passenger safety.

140.    The defective and unreasonably dangerous Engine and the inadequate warnings and safety instructions, from Defendant Engine Manufacturers was the direct and proximate cause of the engine failure and the resulting injuries suffered by Drs. Tyler and Alexis Albin, and the wife of Joe Arenas.

141.    As a direct and proximate result of the foregoing, Drs. Tyler and Alexis Albin suffered, and will continue to suffer, severe emotional and psychological injuries, including post-traumatic stress disorder, and physical injuries and resulting expenses and damages, as well as loss of consortium, the amount of which is undetermined at this time.

142.    Plaintiff Joe Arenas was not a passenger on Flight 1380, but he suffered the loss of consortium of his wife, due to the devastating impact upon their marital relationship, including disruption of a healthy and happy family life and resulting loss of support, services, companionship, affection, society, intimate relations and solace.

143.    By reason of the foregoing, Defendant Engine Manufacturers are liable to Drs. Tyler and Alexis Albin for compensatory damages, including loss of consortium, and to Joe Arenas for loss of consortium, in sums to be determined at trial.

## SEVENTH CAUSE OF ACTION
## PUNITIVE DAMAGES AGAINST DEFENDANT BOEING

31

144.    Plaintiffs incorporate by reference the factual allegations in the preceding paragraphs as if fully set forth herein.

145.    Defendant Boeing's systemic failure to provide Boeing 737 aircraft free of defective and unreasonably dangerous design and manufacture, and failure to provide adequate warnings and safety instructions, is manifested by horribly tragic crashes, the most recent being Ethiopian Airlines Flight 302 that crashed in Ethiopia on March 10, 2019 and took the lives of 157 people; the Lion Air Flight 610 that crashed in the sea off the coast of Indonesia on October 29, 2018 and killed 189 people; and Global Air Flight 972 that crashed in Mexico on May 18, 2018 with 112 fatalities.  It has also caused catastrophic economic damages to air carriers worldwide.

146.    The engine explosion on Flight 1380 that is the subject of this case was foreshadowed by a similar engine explosion on a Boeing 737 aircraft, about a year and a half earlier, involving Southwest Airlines Flight 3472 on August 27, 2016 in Florida, which caused severe damage to the plane.  Fortuitously, the pilot was able to make an emergency landing and avoid loss of life.

147.    Defendant Boeing had knowledge of its systemic failure to provide all models of Boeing 737 aircraft free of defective and unreasonably dangerous design and manufacture, and failure to provide adequate warnings and safety instructions, for Boeing 737 aircraft; and Defendant Boeing was aware of the enormous cost of such failure in human lives loss and the suffering endured by survivors such as that inflicted upon the Plaintiffs in this case.

148.    Upon information and belief, Defendant Boeing was aware of safety concerns with the CFM56-7B engines and the imperative need for adequate monitoring, inspection, testing, service, maintenance and repair.

149. Specifically, in September 2016 Defendant Southwest Airlines experienced an engine failure of the same type (broken fan blade), on the same type engine (CFM56-7B), on the same type aircraft (Boeing 737-700), as with Flight 1380 (the "2016 Engine Failure").

150. Upon information and belief, all Defendants, including Defendant Boeing, were aware of the "2016 Engine Failure" and the dangerous propensity for such catastrophic engine failure, and the serious, potentially fatal, consequences resulting therefrom.

151. Defendant Boeing's willful, wanton and/or reckless conduct as set forth herein was the direct and proximate cause of the engine failure and the resulting injuries and damages suffered by Drs. Tyler and Alexis Albin, and the wife of Joe Arenas, and Plaintiff Joe Arenas for loss of consortium.

152. By reason of the foregoing, Defendant Boeing is liable to all Plaintiffs for punitive damages. Though no specific amount can be requested, as damages should be set by the enlightened conscience of the jury, Plaintiff believes that damages for this misconduct must at a minimum be $1 billion given the extreme loss of life and economic damages that have resulted from Boeing's willful misconduct.

**EIGHTH CAUSE OF ACTION**

**PUNITIVE DAMAGES AGAINST DEFENDANTS SOUTHWEST AIRLINES; GE AVIATION SYSTEMS; SAFRAN USA; AND CFM INTERNATIONAL**

33

FILED: NEW YORK COUNTY CLERK 06/04/2019 01:42 PM
NYSCEF DOC. NO. Case 1:19-cv-05761-PKC   Document 1-1   Filed 06/19/19   Page 138 of 150

INDEX NO. 155786/2018
RECEIVED NYSCEF: 06/07/2019

153.    Plaintiffs incorporate by reference the factual allegations in the preceding paragraphs as if fully set forth herein.

154.    Upon information and belief, all Defendants were aware of safety concerns with the CFM56-7B engines and the imperative need for adequate monitoring, inspection, testing, service, maintenance and repair.

155.    Specifically, in September 2016 Defendant Southwest Airlines experienced an engine failure of the same type (broken fan blade), on the same type engine (CFM56-7B), on the same type aircraft (Boeing 737-700), as with Flight 1380 (the "2016 Engine Failure").

156.    Upon information and belief, all Defendants were aware of the "2016 Engine Failure" and the dangerous propensity for such catastrophic engine failure, and the serious, potentially fatal, consequences resulting therefrom.

157.    Upon information and belief, following the 2016 Engine Failure, the Defendant Engine Manufacturers made a meager effort to address the danger by issuing a technical bulletin urging its customers, including Defendant Southwest Airlines, to conduct more frequent ultrasonic inspections of the engine fan.

158.    Upon information and belief, the Defendant Engine Manufacturers did nothing more to address the known danger inherent in the subject engines for the protection of passengers on aircraft that were powered by the subject engines.

159.    Upon information and belief, Defendant Southwest Airlines did nothing to address the known danger inherent in the subject engines for the protection of passengers on it flights with aircraft that were powered by the subject engines.

34

160.     Upon information and belief, Defendant Southwest Airlines failed and refused to comply with the Defendant Engine Manufacturer's bulletin, and it did not conduct ultrasonic inspections of the engine fan as urged by such bulletin.

161.     Defendant Southwest Airlines' failure and refusal to comply with the Engine Manufacturer's safety bulletin, and its failure and refusal to take any action to address the known danger inherent in the subject engines, constituted willful or wanton negligence, and/or recklessness, and/or manifested a conscious disregard of the safety of its passengers, and/or conduct so reckless as to amount to such disregard.

162.     Defendant Engine Manufacturers' failure and refusal to take any action to address the known danger inherent in the subject engines for the safety of passengers on aircraft powered by the subject engines it sold, other than the mere publication of a bulletin, constituted willful or wanton negligence, and/or recklessness, and/or manifested a conscious disregard of the safety of its passengers, and/or conduct so reckless as to amount to such disregard.

163.     Defendant Southwest Airlines' willful, wanton and/or reckless conduct as set forth herein was the direct and proximate cause of the engine failure and the resulting injuries and damages suffered by Drs. Tyler and Alexis Albin, and the wife of Joe Arenas, and Plaintiff Joe Arenas for loss of consortium.

164.     By reason of the foregoing, Defendant Southwest Airlines is liable to all Plaintiffs for punitive damages in a sum to be determined by a jury at trial.

165.     Defendant Engine Manufacturers' willful, wanton and/or reckless conduct as set forth herein was the direct and proximate cause of the engine failure and the resulting injuries and

35

damages suffered by Drs. Tyler and Alexis Albin, and the wife of Joe Arenas, and Plaintiff Joe Arenas for loss of consortium.

166.    By reason of the foregoing, Defendant Engine Manufacturers are liable to all Plaintiffs for punitive damages in a sum to be determined by a jury at trial.

## NINTH CAUSE OF ACTION
## LOSS OF CONSORTIUM

167.    Plaintiffs incorporate by reference the factual allegations in the preceding paragraphs as if fully set forth herein.

168.    Drs. Tyler and Alexis Albin are, and at all relevant times were, married.

169.    Drs. Tyler and Alexis Albin have suffered, and will continue to suffer, loss of consortium, including devastating impact upon their marital relationship, and disruption of a healthy and happy family life and resulting loss of support, services, companionship, affection, society, intimate relations, solace and other physical, emotional and psychological harm inflicted upon the martial relationship as a result of the Flight 1380 incident.

170.    Each Defendant's actions and/or omissions as alleged herein were the direct, proximate, legal cause of the loss of consortium suffered by Drs. Tyler and Alexis Albin.

171.    Drs. Tyler and Alexis Albin are entitled to an award for past and future loss of consortium, for the harm inflicted upon the martial relationship as a result of the Flight 1380 incident, and other damages according to law.

172.    Plaintiff Joe Arenas and his wife, Cindy Arenas, are, and at all relevant times were, married.

36

173.    Plaintiff Joe Arenas has suffered, and will continue to suffer, loss of consortium, including devastating impact upon their marital relationship, and disruption of a healthy and happy family life and resulting loss of support, services, companionship, affection, society, intimate relations, solace and other physical, emotional and psychological harm inflicted upon the martial relationship as a result of the Flight 1380 incident.

174.    Each Defendant's actions and/or omissions as alleged herein were the direct, proximate, legal cause of the loss of consortium suffered by Plaintiff Joe Arenas.

175.    Plaintiff Joe Arenas is entitled to an award for past and future loss of consortium for the harm inflicted upon the martial relationship as a result of the Flight 1380 incident, and other damages according to law.

## TENTH CAUSE OF ACTION
## VIOLATION OF GENERAL BUSINESS LAW SECTION 349

176.    Plaintiffs incorporate by reference the factual allegations in the preceding paragraphs as if fully set forth herein.

177.    Defendants, Boeing, Southwest Airlines, GE Aviation Systems, Safran USA, and CFM International engaged in deceptive and misleading acts and practices, in their business of designing, developing, manufacturing and selling engines for aircraft and providing transportation as a common carrier, to consumers and the public at large.

178.    Defendants, Boeing, Southwest Airlines, GE Aviation Systems, Safran USA, and CFM's egregious conduct oriented towards the consumer is the direct and proximate cause of the damages suffered by Drs. Tyler and Alexis Albin, as well as Joe Arenas.

37

179.    As a result of the foregoing, the protection of the consumer has been compromised and consumer confidence in the ability of the defendants to provide safe transportation has suffered.

180.    As a direct and proximate result of the foregoing, Drs. Tyler and Alexis Albin suffered, and will continue to suffer, severe emotional and psychological injuries, including post-traumatic stress disorder, physical injuries and resulting expenses and damages, as well as loss of consortium, the amount of which is undetermined at this time.

181.    By reason of the foregoing, Defendants Boeing, Southwest Airlines, GE Aviation Systems, Safran USA, and CFM International are liable to Drs. Tyler and Alexis Albin for treble actual damages suffered up to the stated limit under New York General Business Law Section 349(h) and punitive damages.

## ELEVENTH CAUSE OF ACTION

## FRAUD

182    Plaintiffs incorporate by reference the factual allegations in the preceding paragraphs as if fully set forth herein.

183.    Defendants, Boeing, Southwest Airlines, GE Aviation Systems, Safran USA, and CFM International engaged in fraudulent acts and practices, in their business of designing, developing, manufacturing and selling engines for aircraft and providing transportation as a common carrier, to consumers and the public at large.

184.  Defendants have engaged in both actual and constructive fraud with respect to representations that they have made to the public regarding the safety of their operations and the Boeing 737 aircraft.

38

185.   Defendants have made intentional and negligent misrepresentations regarding the safety of their operations and the Boeing 737 aircraft and its engines.  In a statement regarding the building of the 737 Max, Boeing stated, "that safety is our highest priority as we design, build, and support our airplanes."

186.  Plaintiffs reasonably relied upon the representations made by Defendants with respect to the safety of their operations and the Boeing 737 aircraft in purchasing their fare for passage on the subject Boeing 737 aircraft.

187.  As a result of their reliance upon statements made by defendants, plaintiffs have been caused to suffer damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

1.      For compensatory or general damages in an amount according to proof for Plaintiffs Drs. Tyler and Alexis Albin;

2.      For special and economic damages, including past and future expenses, according to proof for Plaintiffs Drs. Tyler and Alexis Albin;

3.      For loss of consortium suffered by all Plaintiffs;

4.      For punitive damages for all Plaintiffs against Defendant Boeing and all other defendants in an amount to be determined by the enlightened conscience of the jury;

5.      For costs and attorney's fees of suit incurred herein;

6.      For such other and further relief as this Court may deem just and proper.

39

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.


**Jonathan W. Johnson, LLC**          /s/ Jonathan W. Johnson
2296 Henderson Mill Road, Suite 304          Jonathan W. Johnson
Atlanta, GA 30345          New York Bar Number: 2543189
404.298.0795 Telephone          *Attorney for Plaintiffs*
404.941.2285 Facsimile
jwj@jonathanjohnsonatlantalawyer.com


**The James Law Firm, PLLC**          /s/ Jacqueline M. James
445 Hamilton Avenue, Suite 1102          Jacqueline M. James
White Plains, New York 10601          New York Bar Number: 2384220
914.358.6423 Telephone          *Attorney for Plaintiffs*
914.358.6424 Facsimile
jjameslaw@optonline.net

40

# EXHIBIT A-17

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF   NEW YORK

| | |
|---|---|
| Cindy Candy Arenas, Jaky Alyssa Arenas, Jiny Alexa Arenas, Joe Leos Arenas, Elhadji Cisse, Donald Kirkland, Beverly Kirkland, Connor Brown, Cassandra Adams, Dr. Lance Tyler Albin and Dr. Alexis Victoria Albin | Index No.   155786/2018 |
| Plaintiff(s), | |
| -against- | Summons |
| Southwest Airlines Co.;The Boeing Company; GE Aviation Systems, LLC; Safran USA, Inc.; and CFM International, Inc. | Date Index No. Purchased: |
| Defendant(s). | |

To the above named Defendant(s)

Southwest Airlines Co.
Corporation Service Company
80 State Street, Albany, New York 12207

You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

The basis of venue is   where the cause of action arose which is   permitted pursuant to New York Consolidated Laws, Civil Practice Law and Rules CVP § 503(a).

Dated:   Atlanta, Georgia

June 7, 2019

Jonathan W. Johnson, LLC

by  /s/ Jonathan W. Johnson

Jonathan W. Johnson
Attorneys for Plaintiff

Cindy Candy Arenas, Jaky Alyssa Arenas, Jiny Alexa Arenas, Joe Leos Arenas, Elhadji Cisse, Donald Kirkland, Beverly Kirkland, Connor Brown, Cassandra Adams, Dr. Lance Tyler Albin and Dr. Alexix Victoria Albin

Jonathan W. Johnson, LLC
2296 Henderson Mill Rd., Suite 406
Atlanta, Georgia 30345

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF  NEW YORK

------------------------------------------

Cindy Candy Arenas, Jaky Alyssa  Arenas, Jiny Alexa Arenas,
Joe Leos Arenas, Elhadji Cisse, Donald Kirkland, Beverly
Kirkland, Connor Brown, Cassandra Adams, Dr. Lance Tyler
Albin and Dr. Alexis Victoria Albin

                                                Plaintiff(s),

                   -against-

Southwest Airlines Co.;The Boeing Company; GE Aviation
Systems, LLC; Safran USA, Inc.; and CFM International,
Inc.

                                                Defendant(s).

------------------------------------------

Index No.   155786/2018

**Summons**

Date Index No. Purchased:

To the above named Defendant(s)

The Boeing Company
Corporation Service Company
80 State Street, Albany, New York 12207

   You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

   The basis of venue is  where the cause of action arose which is  permitted pursuant to New York Consolidated Laws, Civil Practice Law and Rules CVP § 503(a).

Dated:  Atlanta, Georgia

        June 7, 2019

                                    Jonathan W. Johnson, LLC

                                    by /s/ Jonathan W. Johnson

                                       Jonathan W. Johnson
                                    Attorneys for Plaintiff

                                    Cindy Candy Arenas, Jaky Alyssa Arenas, Jiny
                                    Alexa Arenas, Joe Leos Arenas, Elhadji Cisse,
                                    Donald Kirkland, Beverly Kirkland, Connor
                                    Brown, Cassandra Adams, Dr. Lance Tyler
                                    Albin and Dr. Alexix Victoria Albin

                                    Jonathan W. Johnson, LLC
                                    2296 Henderson Mill Rd., Suite 406
                                    Atlanta, Georgia 30345

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF  NEW YORK

---

Cindy Candy Arenas, Jaky Alyssa  Arenas, Jiny Alexa Arenas,
Joe Leos Arenas, Elhadji Cisse, Donald Kirkland, Beverly
Kirkland, Connor Brown, Cassandra Adams, Dr. Lance Tyler
Albin and Dr. Alexis Victoria Albin

Plaintiff(s),

-against-

Southwest Airlines Co.;The Boeing Company; GE Aviation
Systems, LLC; Safran USA, Inc.; and CFM International,
Inc.

Defendant(s).

---

Index No.   155786/2018

**Summons**

Date Index No. Purchased:

To the above named Defendant(s)

CFM International, Inc.
The Corporation Trust Company
Corporation Trust Center 1209 Orange Street, Wilmington, Delaware 19801

You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

The basis of venue is  where the cause of action arose
which is  permitted pursuant to New York Consolidated Laws, Civil Practice Law and Rules CVP § 503(a).

Dated:  Atlanta, Georgia

June 7, 2019

Jonathan W. Johnson, LLC

by _/s/ Jonathan W. Johnson_

Jonathan W. Johnson
Attorneys for Plaintiff

Cindy Candy Arenas, Jaky Alyssa Arenas, Jiny
Alexa Arenas, Joe Leos Arenas, Elhadji Cisse,
Donald Kirkland, Beverly Kirkland, Connor
Brown, Cassandra Adams, Dr. Lance Tyler
Albin and Dr. Alexix Victoria Albin

Jonathan W. Johnson, LLC
2296 Henderson Mill Rd., Suite 406
Atlanta, Georgia 30345

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

--------------------------------------------------------

Cindy Candy Arenas, Jaky Alyssa Arenas, Jiny Alexa Arenas,
Joe Leos Arenas, Elhadji Cisse, Donald Kirkland, Beverly
Kirkland, Connor Brown, Cassandra Adams, Dr. Lance Tyler
Albin and Dr. Alexis Victoria Albin

                                      Plaintiff(s),

                    -against-

Southwest Airlines Co.;The Boeing Company; GE Aviation
Systems, LLC; Safran USA, Inc.; and CFM International,
Inc.

                                      Defendant(s).

--------------------------------------------------------

Index No.  155786/2018

**Summons**

Date Index No. Purchased:

To the above named Defendant(s)

GE Aviation Systems, LLC
CT Corporation System
111 Eight Avenue, New York, New York 10011

You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

The basis of venue is  where the cause of action arose which is  permitted pursuant to New York Consolidated Laws, Civil Practice Law and Rules CVP § 503(a).

Dated:  Atlanta, Georgia

        June 7, 2019

                              Jonathan W. Johnson, LLC

                              by  /s/ Jonathan W. Johnson _____ ___ ___

                                 Jonathan W. Johnson
                              Attorneys for Plaintitt

                              Cindy Candy Arenas, Jaky Alyssa Arenas, Jiny
                              Alexa Arenas, Joe Leos Arenas, Elhadji Cisse,
                              Donald Kirkland, Beverly Kirkland, Connor
                              Brown, Cassandra Adams, Dr. Lance Tyler
                              Albin and Dr. Alexix Victoria Albin

                              Jonathan W. Johnson, LLC
                              2296 Henderson Mill Rd., Suite 406
                              Atlanta, Georgia 30345

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF   NEW YORK

---

Cindy Candy Arenas, Jaky Alyssa Arenas, Jiny Alexa Arenas,
Joe Leos Arenas, Elhadji Cisse, Donald Kirkland, Beverly
Kirkland, Connor Brown, Cassandra Adams, Dr. Lance Tyler
Albin and Dr. Alexis Victoria Albin

                                        Plaintiff(s),


                            -against-


Southwest Airlines Co.;The Boeing Company; GE Aviation
Systems, LLC; Safran USA, Inc.; and CFM International,
Inc.

                                        Defendant(s).

---

Index No.   155786/2018


Summons


Date Index No. Purchased:

To the above named Defendant(s)

Safran USA, Inc.
Corporation Service Company
80 State Street, Albany, New York 12207

You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

The basis of venue is   where the cause of action arose
which is   permitted pursuant to New York Consolidated Laws, Civil Practice Law and Rules CVP § 503(a).

Dated:   Atlanta, Georgia

   June 7, 2019

                            Jonathan W. Johnson, LLC

                            by   /s/ Jonathan W. Johnson

                               Jonathan W. Johnson
                            Attorneys for Plaintiff

                            Cindy Candy Arenas, Jaky Alyssa Arenas, Jiny
                            Alexa Arenas, Joe Leos Arenas, Elhadji Cisse,
                            Donald Kirkland, Beverly Kirkland, Connor
                            Brown, Cassandra Adams, Dr. Lance Tyler
                            Albin and Dr. Alexix Victoria Albin

                            Jonathan W. Johnson, LLC
                            2296 Henderson Mill Rd., Suite 406
                            Atlanta, Georgia 30345